558 A.2d 189

**Henry JACQUELIN, Appellant,**

**v.**

**ZONING HEARING BOARD OF HATBORO BOROUGH, Appellee.**

Commonwealth Court of Pennsylvania.

Argued March 10, 1989.

Decided May 11, 1989.

Reargument Denied July 19, 1989.

Donald A. Semisch, Scot W. Semisch, Semisch, Semisch and Semisch, Willow Grove, for appellant.

Bernard A. Moore, David B. Beeghley, Beeghley, Moore and Beeghley, Conshohocken, Adrian L. Meyer, Doylestown, for appellee.

Before DOYLE and PALLADINO, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Henry Jacquelin (Jacquelin) appeals the order of the Montgomery County Court of Common Pleas affirming the decision of the Zoning Hearing Board of the Borough of Hatboro (Board) which denied Jacquelin's request for a dimensional variance to construct a single-family residence.

The trial court also affirmed the Board's determination that the property in question is zoned R-1 Residential. The trial court's order is affirmed.

At issue is property located at 101 Crooked Billet Road in Hatboro, Montgomery County, consisting of lots 443 and 444. Lot 443 is fifty feet wide while lot 444 is seventy-five feet wide.

In 1938, Frederick and Lillian Tomlinson purchased lot 444 which was developed with a residence, and in 1945, also purchased the adjacent vacant lot 443 which they essentially treated as a side yard. The Tomlinsons included both lots in a single deed which described the lots as Premises "A" and Premises "B".

In 1972, Hatboro amended its zoning ordinance to require a seventy foot lot width to construct a residence in the R-1 Residential District and a fifty foot lot width to do so in the R-2 Residential District. Eleven years later, Joseph and Carol Clever purchased the property at issue from the executor of Lillian Tomlinson's estate. Again, the property was described in a single deed with reference to lots 443 and 444 as Premises "A" and Premises "B". In 1985, Carol Clever deeded her interest in the property to Joseph Clever vis-a-vis a single deed which again described lots 443 and 444 as Premises "A" and Premises "B".

Joseph Clever entered into two separate agreements of sale in 1987. One agreement of sale was for the purchase of lot 444. The other agreement of sale was with Jacquelin for the purchase of lot 443. Although this agreement of sale was contingent upon whether Jacquelin could secure permission to construct a single-family residence on lot 443, Jacquelin completed settlement despite not having secured such permission.

Jacquelin thereafter requested a building permit to construct a single-family residence on lot 443. The Borough's Zoning Officer and Council informed him that a dimensional

variance was necessary for his proposed construction since lot 443 was zoned R–1 Residential and failed to conform to the ordinance's seventy foot lot width requirement. Jacquelin appealed to the Board, contending that lot 443 was located in the less restrictively zoned R–2 Residential District, and alternatively, requesting a variance for the proposed construction.

After hearings on September 30, 1987 and October 28, 1987, the Board found that lot 443 was zoned R–1 Residential and denied Jacquelin's request for a variance, whereupon Jacquelin appealed to the trial court which affirmed the Board's decision without taking additional evidence. This appeal followed.[1]

Questions presented for review are whether the Board erred in placing the burden of proving the applicable zoning district for lot 443 upon Jacquelin; whether the Board erred in finding that lot 443 was zoned R–1 Residential; and alternatively, whether Jacquelin is entitled to a variance.

Jacquelin contends that the Borough's maps and records are ambiguous, making it impossible to determine the zoning district of lot 443; that the least restrictive use of lot 443 is therefore warranted; and that placement of lot 443 into the R–2 Residential District represents the least restrictive use. Jacquelin further contends that it is the Borough's burden to prove the zoning district of lot 443 since the zoning district boundaries are indefinite and that the Borough failed to sustain this burden.

■ In *Tohickon Valley Transfer, Inc. v. Tinicum Township Zoning Hearing Board*, 97 Pa.Commonwealth Ct. 244, 509 A.2d 896 (1986), this Court stated that zoning maps must clearly delineate zoning district boundaries so

1. Where, as here, the trial court takes no additional evidence, this Court's scope of review is limited to determining whether the Board abused its discretion or committed an error of law. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).

that landowners can rely upon predictable content within the zoning ordinance and map for the purpose of deciding where they can and cannot develop structures. It thus follows that a municipality has a duty to create zoning maps which clearly delineate zoning district boundaries. A municipality that fails in this duty ought not be permitted to place the onus of that failure upon an applicant, such as Jacquelin. Accordingly, where, as here, property is situated in close proximity to two zoning districts and a municipality's zoning maps and records are indefinite as to the line of demarcation between the two zoning districts, the burden of proving in which zoning district the property falls is upon the municipality.

■ Review of the record demonstrates that the Borough sustained its burden and that placement of lot 443 in the R–1 Residential District is not so arbitrary as to constitute an abuse of discretion or error of law. The Borough Manager testified that this determination was essentially based upon a map obtained from the Board of Assessment in Norristown (Map) which indicates that lot 443 falls within the R–1 Residential District. N.T., pp. 5–6, October 28, 1987 Hearing. Although it is not possible from this map alone to precisely determine the zoning classification of lot 443, it provides guidance as to the location of the line of demarcation between the R–1 and R–2 Residential Districts.

Other evidence supportive of the Board's determination includes the Borough Manager's further testimony that zoning lines would most often be drawn at a place where the smaller fifty foot lots conclude and the larger lots commence. N.T., p. 17, October 28, 1987 Hearing. According to the Map, Lot 443 serves as a transition between the smaller and larger lots, with the smaller lots west of lot 443 and the larger lots east of lot 443. The Borough Manager, however, also testified that lots 443 and 444 are marked with a "Z" logo which refers to the merging of the two lots. N.T., p. 9, October 28, 1987 Hearing. Moreover, Lot 444 is

zoned R–1 Residential and Jacquelin does not contest the propriety thereof.

We also note that when the zoning ordinance was amended as to lot widths in 1972, the Tomlinsons maintained lots 443 and 444 as one property. N.T., pp. 41–42, October 28, 1987 Hearing. We note further that there is and has been but one legal address for both lots. Finding of Fact No. 1. It is thus unlikely that the line of demarcation between the R–1 and R–2 Residential Districts would have been drawn so as to separate lot 443 from lot 444.

Nor is Jacquelin entitled to a dimensional variance [2] since lots 443 and 444 constitute a merged parcel held in common ownership and hardship, if any, was self-inflicted. Section 201.71 of the ordinance defines "single and separate ownership" as "the ownership of a lot by one or more persons, partnerships, or corporations, which ownership is separate and distinct from that of any adjoining lot." To establish "single and separate ownership" of contiguous lots, as here, there must be some physical manifestation that the lots are intended to be separate and distinct from each other. *West Goshen Township v. Crater*, 114 Pa.Commonwealth Ct. 245, 538 A.2d 952 (1988). Jacquelin argues that the Tomlinsons, the owners of lots 443 and 444 when the ordinance was amended in 1972, and the Clevers [3] in-

**2.** Variances are governed by Section 912 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10912. Section 912 outlines criteria to be considered in determining whether to grant a variance and provides that the property must possess unique physical circumstances which cause unnecessary hardship sufficient to constitute an unreasonable inhibition of the property's usefulness; that the hardship must not be self-inflicted; that the granting of a variance must not have an adverse impact on the general public's health, safety and welfare; and that the variance sought must be the minimum variance to afford relief. *See also McClintock v. Zoning Hearing Board of Fairview Borough,* 118 Pa.Commonwealth Ct. 448, 545 A.2d 470 (1988).

**3.** Only the intent of landowners at the time of an ordinance's enactment controls. *Parkside Associates, Inc. v. Zoning Hearing Board of Montgomery Township,* 110 Pa.Commonwealth Ct. 157, 532 A.2d 47 (1987).

tended to keep lot 443 separate and distinct from lot 444. In support, Jacquelin notes that the Tomlinsons never fenced lots 443 and 444 so as to give the appearance of one integrated unit; that the lots were separately described although contained in a single deed as well as separately taxed; and that the lots had separate utilities.

Physical merger of two contiguous lots prior to enactment of an ordinance, like that here, warrants a finding that the lots are not held in single and separate ownership. *West Goshen Township.* Testimony of record indicates that the Tomlinsons landscaped and maintained lots 443 and 444 as a unified parcel of residential property. Finding of Fact No. 7; N.T., pp. 41–42, October 28, 1987 Hearing. That lots 443 and 444 had separate utilities, were separately described in a single deed, and separately taxed is immaterial. Such items are not physical manifestations serving to separate the two lots. *See Id.* Accordingly, lots 443 and 444 are deemed to have merged to form a single tract of residential property and subdivision thereof into two lots, one of which is undersized, constitutes a self-inflicted hardship as to the undersized lot. *Parkside Associates, Inc. v. Zoning Hearing Board of Montgomery Township,* 110 Pa.Commonwealth Ct. 157, 532 A.2d 47 (1987). Denial of Jacquelin's requested variance was therefore proper.[4]

Having found no abuse of discretion nor error of law by the Board, the order of the Montgomery County Court of Common Pleas is affirmed.

ORDER

AND NOW, this 11th day of May, 1989, the order of the Court of Common Pleas of Montgomery County is affirmed.

4. We also note that Jacquelin presented no specific plans to the Board concerning his proposed residence. Jacquelin, as the party seeking the variance, bore the burden of proof. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). Denial of the variance here may thus have been justified on this basis alone.