602 A.2d 425

### The BOARD OF SUPERVISORS OF MONTGOMERY TOWNSHIP, Appellant,

v.

### WELLINGTON FEDERAL DEVELOPMENT CORPORATION and Julian Andre, Michael Andre, Ernest Andre, and William Andre, Appellees.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1991.

Decided Jan. 13, 1992.

Petition for Allowance of Appeal Denied May 26, 1992.

16

Emory W. Buck, for appellant.

David H. Moskowitz, for appellees.

Before DOYLE and BYER, JJ., and LORD, Senior Judge.

DOYLE, Judge.

The Board of Supervisors of Montgomery Township (Board) appeals an order of the Court of Common Pleas of Montgomery County which granted the request for a curative amendment filed by Wellington Federal Development Corporation (Wellington) and Julian Andre, Michael Andre, Ernest Andre and William Andre (the Andres) and approved their plan for the development of a tract of ground in Montgomery Township (Township).

The subject property consists of approximately five and three-tenths (5.3) acres and is located at the intersection of Route 202 and County Line Road. It was part of a larger tract of approximately 46.79 acres which was owned by the Andres prior to February 27, 1979. On that date the Township approved a two-lot subdivision of the 46.79 acre tract which resulted in the creation of this 5.3 acre parcel and a 41.49 acre parcel. The larger parcel was subsequent-

ly transferred by the Andres to a developer known as Kasorex. On September 4, 1979, the Township enacted Ordinance 17–AAA which rezoned by metes and bounds the subject property (as well as a substantial area of adjoining property) from R–1 Residential to R–5 Residential. No change in the zoning of the subject property has taken place since the enactment of Ordinance 17–AAA on September 4, 1979.

Abutting the subject property to the southeast and southwest is a three hundred sixty-two (362) acre tract of land, which includes the 41.49 acre parcel mentioned above, which had been the subject of litigation. In settlement of that litigation, the Township and the developer, Kasorex, entered into a stipulation (Kasorex Stipulation) which was approved by the common pleas court on July 10, 1984.[1] Thereafter, the Township Engineer, acting at the request of the Township Manager, changed the zoning map to designate those areas included in the stipulation as being "CA", or "Court Approved" category. As this change on the map was made, the R–5 designation of the 5.3 acre parcel was inadvertently removed, which then caused the map to show the 5.3 acre tract as included within the "CA" category. The 5.3 acre parcel, the subject property of this appeal, however, was never included in the "CA" category nor was it ever meant to be.[2]

On or about June 8, 1988, two corporate officers of Wellington purchased a zoning ordinance and a zoning map from the Township. On the zoning map, the subject property is shown to be included within the area designated "CA". The officers of Wellington then reviewed the Kasorex Stipulation and determined that the property in question was *not* included within that stipulation. On July 7, 1988, Wellington entered into an agreement of sale with the Andres for

1. This stipulation imposed different zoning classifications and restrictions on various sections of the tract to permit a mixed residential development within the tract.
2. A copy of the portion of the zoning map which illustrates the location of the subject property and which shows the property without the zoning designation is included as an appendix to this opinion.

the 5.3 acre parcel. Apparently under the agreement, which was not in evidence, Wellington could refuse to make settlement if commercial development was not permitted.

On October 17, 1988 Wellington appeared before the Board with an informal request that the Board rezone the subject property to permit a commercial development. The Board at that time informed Wellington that it would not approve such a rezoning request.

On November 10, 1988, the large zoning map on display to the public in the Township Zoning Office was corrected to indicate that the property in question was zoned R–5. However, the zoning map being sold to the public on that date still indicated that the subject property was within the CA district.

On March 3, 1989, Wellington and the Andres filed with the Board, pursuant to the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202,[3] a request for a hearing concerning a challenge to the validity of the zoning ordinance and zoning map of the Township together with a proposed curative amendment to change the zoning of the subject property to S–Shopping Center District.[4]

By decision and order dated August 4, 1989, the Board denied the proposed curative amendment. Wellington and the Andres appealed to the common pleas court and by order dated June 28, 1990, the common pleas court granted their request for a curative amendment and allowed their plan for development of the property.

On July 5, 1990, the Board filed an appeal to this Court. On November 21, 1990, Wellington and the Andres filed a

**3.** This Act was reenacted by the Act of December 21, 1988, P.L. 1329.

**4.** Wellington and the Andres filed their request pursuant to Section 609.1 of the MPC, 53 P.S. 10609.1, pertaining to procedure for landowner curative amendments, and Section 1004 of the MPC, 53 P.S. 11004, pertaining to validity of ordinances. Article X of the MPC, of which Section 1004 was a part, was repealed by the Act of December 21, 1988, P.L. 1329. Section 916.1 of the MPC, 53 P.S. § 10916.1, which now pertains to validity challenges, was added to the MPC by the Section 99 of the Act of December 21, 1988, P.L. 1329.

petition to remand to the Court of Common Pleas for correction of the record. In this petition, they allege that the exhibit in the record marked A–2, which shows the subject property as being zoned R–5, is not the exhibit which was introduced into evidence at a hearing before the Board held on April 18, 1989. By order dated December 5, 1990, the petition to remand was granted.

On February 25, 1991, the parties entered into a stipulation whereby they agreed that the zoning map of the Township presently in the record as Exhibit A–2 was not the zoning map the applicants entered into evidence at the April 18, 1989 hearing. The parties further agreed to correct the record to reflect that Exhibit A–2, which was entered into evidence at the hearing, is identical to the zoning map later entered by the the Property Owners as Exhibit A–20.[5] By order dated February 28, 1991, the Stipulation was approved by the common pleas court.

■ Thereafter, the Board filed a brief which included, on page 24, a photocopy of a portion of a zoning map. This map indicates that the subject property is zoned R–5. On May 10, 1991, Wellington and the Andres filed a petition requesting that this Court dismiss the appeal or, in the alternative, direct that this page of the Board's brief be removed.[6] They argue that no zoning map designating the property as being zoned R–5 was ever introduced into the record. Wellington and the Andres further argue that a copy of a document which is not part of the record may not be included as an exhibit to a brief, especially when the document is inconsistent with the exhibits which are part of the record. They suggest that the Court has authority under Pa.R.A.P.1926 to direct that this page of the Board's

5. Exhibit A–20 shows the subject property as being included within the CA district.

6. By order dated May 31, 1991, the motion to dismiss the appeal was denied. The order further directed the Chief Clerk to schedule the argument on the merits of the motion for correction of the record along with the merits of the appeal.

brief be removed in order to ensure a correct record.[7]

The Board, on the other hand, argues that Pa.R.A.P. 2134(c) permits the inclusion of an exhibit which is not part of the record if the exhibit would be of assistance to the Court. Rule 2134 provides in pertinent part:

> **(a) General Rule.** All maps, plans and drawings used on appeal must conform to the provisions of this rule.
>
> . . . .
>
> **(c) Prepared Specially for Argument.** If a draft or plan is not contained in the record, *but would be of assistance to the appellate court* as prescribed in Subdivision (a) of this rule, a simple draft, plan or sketch, made by or for the appellant, folded to the same size as the brief, shall be attached to or filed with the brief of the appellant, marked so as to show it was not part of the record. Under like circumstances, the appellee may prepare and attach to or file with the brief for the appellee a draft, plan or sketch made by or for the appellee. Either party may point out, in his brief or reply brief, wherein he considers the one presented by his adversary not to be correct.

(Emphasis added.)

Because the photocopy of the zoning map would be helpful to the Court in understanding the location of the property in question, we will deny Wellington and the Andres' motion and permit the photocopy of the zoning map to remain in the Board's brief for this limited purpose. We

---

**7.** Pa.R.A.P.1926, entitled Correction or Modification of the Record provides:

> If any difference arises as to whether the record truly discloses what occurred in the lower court, the difference shall be submitted to and settled by that court after notice to the parties and opportunity for objection, and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the lower court either before or after the record is transmitted to the appellate court, or the appellate court, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the appellate court.

wish to make clear, however, that this zoning map is *not* part of the record, was *not* the map given to the corporate officers of Wellington and is *not* authority for the fact that the subject property was zoned R–5. We allow the map incorrectly designated as "A–2" to remain in the brief at page 24, only for the very limited purpose of identifying the subject property.

We now consider the issues raised by the parties in this appeal, keeping in mind our scope of review. Where the trial court takes no additional evidence, our scope of review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law in denying Wellington and the Andres' request for a curative amendment. *Atlantic Refining & Marketing Co. v. Zoning Hearing Board of Upper Merion Township*, 133 Pa.Commonwealth Ct. 261, 575 A.2d 961 (1990). We may conclude that the Board abused its discretion only if the findings are not supported by substantial evidence. *Id.*

 As a threshold matter, we consider the effect of the erroneous inclusion of the subject property in the CA district on the zoning maps sold to the public. The Board concluded in denying the application for a curative amendment, that the error on the zoning map did not change the subject property's zoning or render it unzoned. Wellington and the Andres, on the other hand, contend that because of this error, the property is totally unzoned.

Section 402 of the MPC, 53 P.S. § 10402,[8] grants exclusive authority to the governing body to amend a zoning map. In the instant case, the Board enacted Ordinance No. 17–AAA on September 4, 1979, changing the zoning of the subject property from R–1 Residential to R–5 Residential. As part of this ordinance, the zoning map was amended and revised to reflect this change. No subsequent action was

8. Section 402 provides in pertinent part:
 (a) Prior to the adoption of the official map or part thereof, or any amendments to the official map, the *governing body* shall refer the proposed official map, or part thereof or amendment thereto, with an accompanying ordinance describing the proposed map, to the planning agency for review. (Emphasis added.)

taken by the Board to change the zoning classification of the property.[9] We therefore conclude, because Township employees have no authority to amend the zoning map, that their mere administrative error in changing the designation on the map could not operate to amend the zoning map or to render the so-designated property unzoned. Accordingly, we hold that the Board did not err in concluding that the zoning of the subject property remained R–5.

Wellington and the Andres cite *Tohickon Valley Transfer, Inc. v. Tinicum Township Zoning Hearing Board*, 97 Pa.Commonwealth Ct. 244, 509 A.2d 896 (1986), for the proposition that "zoning district boundaries ... must appear upon the zoning map with definiteness in order that landowners can rely upon predictable content within the zoning ordinance and map for the purpose of deciding where they can develop structures and where they cannot do so." In *Jacquelin v. Zoning Hearing Board of Hatboro Borough*, 126 Pa.Commonwealth Ct. 20, 558 A.2d 189 (1989), *petition for allowance of appeal denied*, 525 Pa. 606, 575 A.2d 571 (1990), this Court construed the above language in *Tohickon Valley Transfer* as imposing a duty on a municipality to create a zoning map which clearly delineates zoning district boundaries. A municipality that fails to do so, cannot place the onus of that failure upon an applicant. *Jacquelin.*

We recognize these general principles of law but find them inapplicable in this case where (a) the applicant had knowledge of the error on the zoning map and (b) the error was corrected on the map prior to the filing of the curative amendment. In the instant case the large zoning map on display in the Township Zoning Office was corrected on November 10, 1988 to indicate that the subject property was zoned R–5. Wellington and the Andres' request for a curative amendment was filed on March 3, 1989, almost four months after this correction was made. According to the testimony of the deputy zoning officer taken at the

9. Section 609 of the MPC, 53 P.S. § 10609, grants exclusive authority to the governing body to amend the zoning ordinance.

Board meeting on June 20, 1989, when the president of Wellington came into the Office of Code Enforcement on that day with an application for a curative amendment, he was shown the large mylar map on the wall which then designated the zoning of the subject property as R–5.

We also find relevant as demonstrating Wellington and the Andres' knowledge of the error on the zoning map, a copy of a page of the minutes of the October 17, 1988 meeting of the Board. According to these minutes, representatives from Wellington approached the Board with a preliminary plan for rezoning the tract to include a shopping center on the property. Had they truly believed their property was within the CA district, obviously no such request would have been made.

■ While the general principles we enunciated in *Tohickon* and *Jacquelin* remain true, it is equally true, and we now hold, that a mere administrative error in misdesignating the zoning district of a specific property cannot change the zoning classification of that property so that it is completely unzoned. Even if a contrary argument had any merit at all, it is inexplicable why the zoning classification would be "unzoned" rather than take on the new zoning classification of the error. However, the consequence in either case would be to allow an innocent administrative mistake alone to bind municipal governments, a result we refuse to tolerate.

■ We next consider whether the Board erred in denying Wellington and the Andres' request for a curative amendment. They based their challenge to the validity of the zoning ordinance and zoning map solely on the alleged failure of the Board to provide for lawful and valid zoning in the area of the subject property. In denying the curative amendment, the Board found that lawful and valid zoning did apply to the subject property. We have held that the Board did not err in concluding that the zoning of the property remained R–5. It therefore follows that the Board

did not err in denying a curative amendment on the basis that the property did not have valid zoning.[10]

Because we hold that the Board did not abuse its discretion or commit an error of law, we reverse the order of the Court of Common Pleas of Montgomery County.

## ORDER

NOW, January 13, 1992, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is reversed. Appellees' motion for correction of the record is denied.

This decision was reached before the conclusion of Judge BYER's service.

10. Because we hold that the Board did not err in denying the curative amendment, we do not reach Wellington and the Andres' third argument, that the plan for development is reasonable under the circumstances and should be approved by the court.