627 A.2d 308

**In re Appeal of William T. and Betty J. GREGOR from the Decision of the East Greenville Borough Zoning Hearing Board.**

**Appeal of William T. and Betty J. Gregor, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Nov. 20, 1992.

Decided June 24, 1993.

---

420

Jeffrey F. Bahls, for appellants.

Robert G. Bricker, for appellee.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

SMITH, Judge.

William T. Gregor and Betty J. Gregor appeal from the March 31, 1992 order of the Court of Common Pleas of Montgomery County which affirmed the decision of the Zoning Hearing Board of the Borough of East Greenville (Board) denying their application for a variance. The issue presented on appeal is whether two lots held by the Gregors in common ownership physically merged into a single conforming lot for the purpose of determining their entitlement to a variance.

I

In 1980, the Gregors purchased an unimproved lot identified as Tax Map Block 7, Unit 41 (Lot 41). Lot 41 is located in an R1–Residential zoning district which permits construction of a single-family dwelling. The lot abuts to the north a plotted but unopened street known as Fifth Street (Fifth Street); to the west a plotted but unopened twenty-foot-wide alley (Alley); to the south a vacant landlocked lot; and to the east the borough line. Lot 41 thus has no frontage on a public street, as required by Section 95–96 of the Borough of East Greenville Zoning Ordinance No. 2–69, *as amended*, which was adopted in 1969 and provides that "[e]ach and every lot shall abut a public street for at least fifty (50) feet at the right-of-way line." The Gregors filed an application for a variance from the ordinance requirement to construct a single-family dwelling on Lot 41.

The following relevant facts developed at the hearing are not disputed. Lot 41 and the surrounding lots were laid out in the 1950's as building lots. The original survey included a provision for the extension of Fifth Street which would have provided frontage and access to Lot 41. On August 11, 1967, the Gregors purchased another lot identified as Lot 40, located immediately to the north of Lot 41, and resided there until January 12, 1990 when the lot was sold. According to the tax map, Lot 40 abuts to the south Fifth Street which divides Lots 40 and 41. The Gregors proposed that they would gain access to Lot 41 from a street known as Old Fifth Street through a

driveway to be constructed in a northerly direction on a portion of the Alley on which they claim to have an easement right and that utilities, including water and sewer, would likewise be extended to Lot 41 along the Alley. The neighboring property owners disputed the existence of the Gregors' easement right over the Alley.

■ The Board found that Lot 41 would meet all of the lot area, setback and side-yard requirements except the requirement of frontage on a public street. The Board concluded that because Lots 40 and 41 were held in common ownership and were used as one lot by the Gregors from 1980 to 1990, the two lots merged into a single conforming lot with frontage on a public street, i.e., Old Fifth Street, and that Lot 41 therefore ceased to be nonconforming. The Board stated that the Gregors are not entitled to a variance because both lots were not held in single and separate ownership since enactment of the zoning ordinance under Section 95–90.[1] The Board denied the Gregors' request for a variance finding that the hardship resulting from the lack of frontage on a public street was self-inflicted by the sale of Lot 40 in 1990. On appeal, the trial court affirmed the Board's denial of a variance.[2] The Gregors contend that the record does not estab-

1. Section 95–90 of the zoning ordinance provides:

A lot of record on the Borough Plan or of record title upon a plan or separately described in a deed and recorded in the office of the Recorder of Deeds of Montgomery County (at Norristown) and which is in single and separate ownership at the time of the enactment of this chapter, where such owner does not own adjoining land or lots and where it is not financially feasible to acquire adjoining land or lots from other owners, may be used for a use permitted in the district in which it is located upon a finding by the Zoning Hearing Board that the lot size is reasonably close to the minimum and maximum regulations under this Article and that owners of lots within three hundred (300) feet thereof, after twenty (20) days' notice and hearing, do not object or will not be adversely affected thereby. Since Lot 41 was held in single and separate ownership at the time of the enactment of the zoning ordinance in 1969 and meets the minimum and maximum lot size requirement, Section 95–90 is inapplicable.

2. This Court's scope of review in zoning cases where, as here, the trial court did not take additional evidence is limited to determining whether the Board committed an error of law or an abuse of discretion. *Isaacs*

lish a merger of Lots 40 and 41 and that the hardship therefore was not self-inflicted.

## II

Under the doctrine of merger of estate in land, a lesser estate is merged into a greater estate whenever both estates meet in the same person. *Griffith v. McKeever*, 259 Pa. 605, 103 A. 335 (1918). This doctrine has no application, however, to zoning law and the construction of a zoning ordinance where, as here, the term "merger" is used to describe the effect of a zoning ordinance on lots held in common ownership and is related to the issue of the physical merger of adjoining lots. *West Goshen Township v. Crater*, 114 Pa.Commonwealth Ct. 245, 538 A.2d 952 (1988). Thus, a physical merger does not occur automatically whenever adjoining lots come into common ownership subsequent to enactment of a zoning ordinance which renders one or both of the lots nonconforming. *Parkside Assoc., Inc. v. Zoning Hearing Board of Montgomery Township*, 110 Pa.Commonwealth Ct. 157, 532 A.2d 47 (1987).

In rejecting the concept of automatic merger, this Court stated in *Crater*:

If [an] owner subdivides the smaller lot from the larger lot, then the 'hardship' is self inflicted. On the other hand, if the first tract were already developed and the owner *acquired the adjacent lot* from another as an investment, then there seems little point in developing a rule which would say 'this lot may be purchased and developed by any person except the owner of the neighboring land.'

*Id.* 114 Pa.Com. at 253, 538 A.2d at 956 (quoting *Scott v. Fox*, 63 Del. 401, 406 (C.P.Pa.1976)) (emphasis in original). Following this reasoning, where, as here, the adjoining lots were held in single and separate ownership at the time of enactment of the ordinance, those lots may be developed as two separate lots if the owner who purchased an adjoining lot subsequent to

*v. Wilkes–Barre City Zoning Hearing Board,* 148 Pa.Commonwealth Ct. 578, 612 A.2d 559 (1992).

enactment of the zoning ordinance intended to keep those lots separate and distinct. *Township of Middletown v. Middletown Township Zoning Hearing Board,* 120 Pa.Commonwealth Ct. 238, 548 A.2d 1297 (1988), *appeal denied,* 522 Pa. 599, 562 A.2d 322 (1989). The burden is placed upon the party who asserts a physical merger to establish the landowner's intent to integrate the adjoining lots into one large parcel.

■ As this Court stated in *Township of Middletown:* [3]

It is undisputed here that both lots were held in 'single and separate ownership' at the time of the passage of the ordinance.... This is not to say, however, that once two adjoining lots are shown to be in 'single and separate ownership' at the time of the relevant zoning ordinance, these lots must *always* be developed as two separate parcels.... The municipality bears the burden of showing that the landowner has integrated the lots into one large parcel. Placing the burden upon the municipality in this context is essentially no different then [sic] placing the burden of proving the abandonment of a nonconforming use upon the party asserting it.

*Id.* 120 Pa.Com.Ct. at 245, 548 A.2d at 1300 (emphasis in original). To meet this burden, the objectors must present the evidence of some overt, unequivocal, physical manifestation of the landowner's intent to integrate the lots into one parcel through the landowner's affirmative actions.

■ In the matter sub judice, the objectors presented no evidence indicating any physical manifestation of the Gregors' intent to integrate the lots into one conforming lot. The Board instead relies upon the following testimony of William T. Gregor during cross-examination to support its finding that the Gregors used Lot 41 as a garden and lawn area for the residence on Lot 40 during their ownership of both lots.

**3.** In *Township of Middletown,* the municipality as a party asserting a physical merger had the burden to establish integration of the lots. In the matter sub judice, the Borough did not intervene in the proceeding, and the adjacent property owners who objected to a variance had to meet that burden.

Q   So from August 11, '67, up until the 12th day of January, 1990, you owned this property, Parcel No. 40?

A   Right.

Q   During the time of your ownership, is it your testimony that there never was an opening of this right of way, a paving of this right of way?

A   No, there wasn't.

Q   So it exists as vacant ground, lawn-type area?

A   Right.

Q   It's been that way since you've been there in '67?

A   Right.

MR. GHEN: I have no further questions.

THE WITNESS: The only thing I used it for was to drive back when I had truck passage back there to haul my things back.

. . . .

Q   When you owned the property that was the former Spotts property?

A   Right.

Q   Other than your driving back to the other lot, nobody else used that alleged right of way back there; did they?

A   No, not that I know of.

N.T., pp. 28–29.   Even assuming that this testimony was sufficient to infer that the Alley and vacant Lot 41 existed as a lawn area, it falls short of any physical features manifesting the Gregors' intent to integrate the two lots into a single residential parcel.

This matter is distinguishable from *Jacquelin v. Zoning Hearing Board of Hatboro Borough,* 126 Pa.Commonwealth Ct. 20, 558 A.2d 189 (1989), *appeal denied,* 525 Pa. 606, 575 A.2d 571 (1990), where prior to enactment of the zoning ordinance, adjoining lots were merged by the former owners' actions in landscaping and maintaining the lots as a unified parcel of residential property. *See also Lebeduik v. Bethlehem Township Zoning Hearing Board,* 141 Pa.Commonwealth Ct. 541, 596 A.2d 302 (1991) (the owners' tapping of the sewer

lateral, removal of the hedge separating the properties and the statement that they would treat two parcels as one property); *Price v. Bensalem Township Zoning Hearing Board,* 131 Pa.Commonwealth Ct. 200, 569 A.2d 1030 (1990) (the owner's blacktopping of the unimproved lot and part of the adjoining improved lot).[4] Hence, the objectors failed to establish a merger of Lots 40 and 41, and the Gregors have a right to develop nonconforming Lot 41. *Crater.*

The Board contends that the hardship was created by the Gregors when they purchased Lot 41 with the knowledge of the zoning restrictions and subsequently sold Lot 40 which rendered the former landlocked. The right to develop a nonconforming lot is not personal to the owner of property at the time of enactment of the zoning ordinance but runs with the land, and a purchaser's knowledge of zoning restrictions alone is insufficient to preclude the grant of a variance unless the purchase itself gives rise to the hardship. *N. Pugliese, Inc. v. Palmer Township Zoning Hearing Board,* 140 Pa.Commonwealth Ct. 160, 592 A.2d 118 (1991). Because their lots were not merged, the Gregors' sale of Lot 40 cannot be the basis for a finding of self-inflicted hardship.

Moreover, unnecessary hardship justifying the grant of a variance is shown when a denial would render a parcel practically useless. *Polonsky v. Zoning Hearing Board of Mt. Lebanon,* 139 Pa.Commonwealth ·Ct. 579, 590 A.2d 1388 (1991). A completely landlocked property such as Lot 41 with no public street frontage exhibits a physical feature which can establish unnecessary hardship to support a variance. *Malakoff v. Board of Adjustment of City of Pittsburgh,* 72 Pa.Commonwealth Ct. 109, 456 A.2d 1110 (1983). The trial court's reliance upon *Glennon v. Zoning Hearing Board of Lower Milford Township,* 108 Pa.Commonwealth Ct.

---

4. The trial court rejected the Gregors' argument that both lots could not merge because plotted but unopened Fifth Street divides two lots. It is unnecessary, however, to address this issue because this Court concludes that the objectors failed to prove the Gregors' intent to merge the lots into a single lot regardless of the disputed existence of an easement right.

371, 529 A.2d 1171 (1987), is inapposite because in that case, the hardship resulting from the lack of frontage on a public or approved private street was created by partition of the larger lot through a tax sale subsequent to enactment of the zoning ordinance, which distinguishes it from the matter sub judice. As the Gregors acknowledge, they must resolve their right to gain access to Lot 41 before construction. Accordingly, the Board erred in denying a variance and the order of the trial court is reversed.

## ORDER

AND NOW, this 24th day of June 1993, the order of the Court of Common Pleas of Montgomery County dated March 31, 1992 is reversed.

DOYLE, Judge, concurring.

I concur in the result reached by the majority because the facts presented in this case fit squarely within the purview of Section 95–90 of the Borough's zoning ordinance.

Section 95–90 of the ordinance, reduced to its essential provisions, states:

A lot ... of record title ... which is in single and separate ownership at the time of the enactment of this chapter [1969], where such owner does not own adjoining land ... may be used for a use permitted in the district in which it is located....

Nothing is more clear than the Gregors owned only Lot 40 (since 1967) when the ordinance was adopted in 1969 and did not acquire Lot 41 until 1980. The East Greenville Borough Zoning Hearing Board ignored Section 95–90, finding only that the Gregors' hardship was "self-created" because they purchased Lot 41 eleven years after the adoption of the zoning ordinance.

In footnote 1 the majority (op. p. 310) concludes that Section 95–90 is inapplicable. To the contrary, since Lot 41 was held in single and separate ownership at the time of the enactment

428

of the zoning ordinance in 1969 and meets the minimum and maximum lot size requirements, Section 95–90 *is* applicable.