## C & C MARINE MAINTENANCE CORPORATION

v.

## ZONING HEARING BOARD OF GEORGETOWN BOROUGH and Borough of Georgetown

### Borough of Georgetown, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1996.

Decided Dec. 17, 1996.

---

**3.** In *Orr v. Unemployment Compensation Board of Review,* 120 Pa.Cmwlth. 45, 548 A.2d 360 (1988),

the status quo was maintained for ten months before the employer implemented its final proposal but the issue of impasse was decided by both parties placing facts in the record. This court reasoned that the record indicated that an impasse had not been reached as negotiations continued after the strike.

Mitchell P. Shahen, Aliquippa, for appellant.

Steven J. Adelkoff, Pittsburgh, for appellee, C & C Maintenance Corporation.

Before FRIEDMAN and KELLEY, JJ., and RODGERS, Senior Judge.

KELLEY, Judge.

The Borough of Georgetown (borough) appeals from an order of the Court of Common Pleas of Beaver County (trial court) which reversed the issuance of a cease and desist order to C & C Marine Maintenance Corporation (C & C Marine) by the Georgetown Borough Zoning Hearing Board (ZHB). We affirm.

The borough adopted a Zoning Ordinance (Ordinance) in April 1964 which regulates land use throughout the borough. The borough also adopted an official zoning map which shows the two types of districts in the borough, R–1 Residential Districts and C–1 Commercial Districts. The zoning map does not have lines delineating zoned districts. Rather, the land is marked on the map with dots for residential uses and diagonal lines for commercial uses. All streets, alleyways, rights of way and rivers are left white or blank on the zoning map.

In 1969, Campbell Barge Line, Inc., a predecessor in interest to C & C Marine, purchased a tract of land in the northwesterly portion of the borough and obtained permits from the United States Army Corps of Engineers to build four "cells" in the Ohio River. The cells were built approximately 30–50 feet into the Ohio River, at a cost of approximately $50,000, and have been used to moor barges for repair work. The use of the cells is beyond the low water mark of the Ohio River. Neither Campbell Barge Line, Inc. nor C & C Marine made any inquiries with respect to the Ordinance and no permits were ever issued by the borough.

In March 1994, the borough's zoning officer issued a cease and desist order to C & C Marine, demanding that it terminate all mooring activities at the four cells in the Ohio River. The zoning officer stated that C & C Marine was in violation of the Ordinance because it was operating a commercial business in a residential district without a permit. C & C Marine appealed the zoning officer's cease and desist order to the ZHB. Public hearings were held before the ZHB in July and August, 1994.

The ZHB found that as part of the operation of its business, C & C Marine wired groups of barges together with large cables and ropes. The ZHB noted that the barges would bang together, creating loud noise at

all hours of the day and night. The banging of the barges also caused vibrations which resulted in damaged or broken windows at nearby residences. The ZHB further found that intense lights shone from the barges into nearby residences. The ZHB stated that the vibrations, noise and lights were annoying and distressing to residents along the Ohio River.

The ZHB noted that the northeasterly portion of the borough between the Ohio River and Water Street was unzoned. However, the ZHB concluded, *inter alia*, that the four cells in this case were not located in an unzoned portion of the borough. The area of the Ohio River where the cells were located adjoined land in the northwesterly portion of the borough which was zoned as a residential district. The ZHB concluded that the area of the Ohio River where the cells were located took on the zoning classification of the land which it adjoined. Therefore, the four cells were located in a residential district. The ZHB further concluded that C & C Marine's use of the Ohio River to operate a business for repairing barges was not permitted in a residential district. As such, the ZHB ordered C & C Marine to cease and desist from operating its business in the northwesterly portion of the borough on the Ohio River.

C & C Marine appealed the ZHB's determination to the trial court. Based upon its review of the Ordinance and the official zoning map, the trial court concluded that there was no clear delineation of a zoning district boundary which extended into the Ohio River. As such, the Ordinance did not restrict the use of the portion of the Ohio River in which· the four cells were located. Accordingly, the trial court reversed the issuance of a cease and desist order to C & C Marine by the ZHB. The borough now appeals to this court.[1]

In its appeal, the borough raises the issue of whether the ZHB erred in concluding that C & C Marine was operating a commercial business in a residential district in violation of the Ordinance. The borough asserts that the ZHB properly determined that the four cells were located in a residential district, especially in light of the fact that the land immediately adjacent to the portion of the Ohio River where the cells were located was zoned as a residential district. Accordingly, the borough argues that C & C Marine was prohibited from using property which was located in a residential district for commercial purposes.

Pursuant to section 603 of the Pennsylvania Municipalities Planning Code (MPC),[2] "[z]oning ordinances may permit, prohibit, regulate, restrict and determine ... [u]ses of land, watercourses and other bodies of water." 53 P.S. § 10603. In regulating the uses of land and water, this court has stated that a zoning map must clearly delineate zoning district boundaries so that landowners can rely upon predictable content within a zoning ordinance and map for the purpose of deciding where they can and cannot develop structures. *Tohickon Valley Transfer, Inc. v. Tinicum Township Zoning Hearing Board,* 97 Pa.Cmwlth. 244, 509 A.2d 896 (1986). As such, a municipality has a duty to create a zoning map which clearly delineates zoning district boundaries. *Jacquelin v. Zoning Hearing Board of Hatboro Borough,* 126 Pa.Cmwlth. 20, 558 A.2d 189 (1989), *petition for allowance of appeal denied,* 525 Pa. 606, 575 A.2d 571 (1990). A municipality which fails to create a zoning map which clearly delineates zoning district boundaries will not be permitted to place the onus of that failure upon a landowner. *Id.* Moreover, where a municipality's zoning maps and records are indefinite as to the line of demarcation between two zoning districts, the burden of proving in which zoning dis-

---

1. In a land use appeal where, as here, the trial court has not taken any additional evidence, this court's scope of review is limited to a determination of whether the governing body (in this case, the ZHB) committed an error of law or abused its discretion. *Herr v. Lancaster County Planning Commission,* 155 Pa.Cmwlth. 379, 625 A.2d 164 (1993), *petition for allowance of appeal denied,*

538 Pa. 677, 649 A.2d 677 (1994). An abuse of discretion occurs when the governing body's findings of fact are not supported by substantial evidence. *Id.*

2. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10101—11202.

trict the property falls is upon the municipality. *Id.*

While section 603 of the MPC allows a municipality to regulate the use of land and water by means of an ordinance, section 603.1 of the MPC[3] further provides that "[i]n interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction." 53 P.S. § 10603.1. *See also Isaacs v. Wilkes–Barre City Zoning Hearing Board,* 148 Pa.Cmwlth. 578, 612 A.2d 559 (1992). We note that interpreting a zoning ordinance includes referring to the official zoning map which accompanies the ordinance. Section 107 of the MPC, 53 P.S. § 10107; Section 401 of the MPC, 53 P.S. § 10401; Section 101 of the Ordinance, Reproduced Record (R.) at 79a–80a.

 In the present case, neither the Ordinance nor the official zoning map extends any zoning boundary or district into the Ohio River. At the hearing before the ZHB, the borough's zoning officer testified that no provision in the Ordinance addressed residential or commercial uses of the Ohio River. R. at 52a–53a. As we have noted, residential districts are identified on the borough's zoning map with dots and commercial districts are identified on the borough's zoning map with diagonal lines. R. at 95a–99a. Our review of the zoning map shows that the Ohio River does not contain any dots or diagonal lines to indicate any type of zoning classification. R. at 99a. Therefore, we must conclude that the borough has not used its zoning power to regulate the use of the Ohio River.

As we have stated, restrictions on the use of property will not be extended by implication. Where there is no clear delineation of a zoning district in the Ohio River, we cannot conclude that the portion of the Ohio River where the four cells are located is a residential district. Our review of the Ordinance and the official zoning map indicates that

there are no restrictions on the use of the Ohio River in the northwesterly portion of the borough where the four cells are located. As such, the ZHB erred when it concluded that C & C Marine was in violation of the Ordinance because it was operating a commercial business in a residential district.

Accordingly, the order of the trial court is affirmed.

### ORDER

NOW, this 17th day of December, 1996, the order of the Court of Common Pleas of Beaver County, dated January 12, 1996, at No. 10261 of 1995, is affirmed.

---

**3.** Section 603.1 was *added by* the Act of December 21, 1988, P.L. 1329.