624 A.2d 766

Brennan E. KNIPPLE

v.

GEISTOWN BOROUGH ZONING HEARING BOARD;

Appeal of GEISTOWN BOROUGH, Appellant.

Commonwealth Court of Pennsylvania.

Argued March 1, 1993.

Decided April 19, 1993.

Timothy C. Leventry, for appellant.

E.R. Walker, for appellee.

Before COLINS and KELLEY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Geistown Borough (Borough) appeals from the June 11, 1992 order of the Court of Common Pleas of Cambria County (trial court) sustaining Brennan E. Knipple's (Owner's) appeal and directing the Borough to grant Owner a variance and a building permit so that he may construct an addition to his existing building with less than the normally permitted set-back from the street. We affirm.

The issue before us for review is whether the trial court erred in concluding that the Borough Zoning Hearing

Board applied and enforced Geistown Zoning Ordinance No. 350[1] in such a way as to consciously discriminate against Owner. Our scope of review in zoning cases depends upon whether the trial court takes additional evidence pursuant to Section 1005–A of the Pennsylvania Municipalities Planning Code (MPC).[2] Where the trial court decides to take additional evidence, as it did here, our scope of review is limited to determining whether that court committed an error of law or abuse of discretion. *De Cray v. Zoning Hearing Board of Upper Saucon Township*, 143 Pa.Commonwealth Ct. 469, 599 A.2d 286 (1991); *Ignelzi v. Zoning Board of Adjustment of the City of Pittsburgh*, 90 Pa.Commonwealth Ct. 350, 495 A.2d 634 (1985).

On May 23, 1991, the Board denied Owner's request for a variance because the "[t]estimony was clear that Mr. Knipple would have many other uses of the property without the setback variances [sic]." Board's Finding of Fact No. 6. Further, the Board concluded that "no hardship is imposed upon the applicant by the denial of the variance." Board's May 23, 1991 order, paragraph 3.

Owner appealed the Board's decision and requested a hearing before the trial court. Accordingly, the trial court took additional testimony on the issue of whether the Board acted in a discriminatory manner in enforcing the variance ordinance. At the hearing, the trial court heard the testimony of Owner, one of his tenants, the Borough's zoning and code enforcement officer and the president of the Borough Council.

Subsequent to the hearing, the trial court made the following findings of fact:

1. Geistown Borough issues in excess of forty building permits each year, many of which include variances. The Zoning Officer could not determine what proportion of these

---

1. Section 601(c) of Geistown Borough Ordinance No. 350 requires that properties located in a commercial district have a fifty foot wide side-yard setback.

2. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 11005–A.

were for commercial, as opposed to residential, properties.[3]

2. Geistown Borough Ordinance No. 601(c) requires that commercial buildings be set back fifty feet from the side property lines.

3. At least ten commercial properties in the immediate area which do not comply with Ordinance No. 601(c) have requested and received building permits and/or variances in the recent past.

4. Petitioner Knipple learned of the Ordinance when he applied for a building permit. Petitioner was granted the building permit and began to break ground when the permit was rescinded.

5. In preparation for the Appeal to the Zoning Hearing Board, Petitioner spent in excess of $2500 for plans drawn to scale, and paid a $350 filing fee.

6. The decision of the Zoning Board in Petitioner's Appeal was made in advance of the May 14, 1991, hearing.[4] A typed six-page decision, prepared in advance, was given to Petitioner after a few minutes of private deliberation.

Findings of Fact Nos. 1–6 (footnotes added).

The trial court concluded that the case *sub judice* was not merely a situation where Owner "was denied a variance in the same situation in which others were granted similar variances." Trial Court's June 11, 1992 Opinion at 5. The court also found that Owner had proved conscious discrimination in the Board's enforcement of the ordinance.

The court determined that conscious discrimination had occurred because the additional evidence taken indicated that ten similarly situated properties in close proximity to Owner had recently received variances and/or building permits, the Board had "encouraged the Petitioner to appeal an adverse decision and [had] accepted money for the privilege of appeal-

3. We take judicial notice of the fact that, in the 1990 census, 2749 people lived in Geistown Borough. United States Department of Commerce, Bureau of the Census, 1990 Census.

4. The Board provided Owner with the typewritten decision at the conclusion of the May 23, 1991 hearing, not at the one held on May 14, 1991. R.R. p. 104.

ing." *Id.* at 4. Further, "the Zoning Board *knew before the hearing* that it intended to deny the variance." *Id.* (emphasis in original). For those reasons, the court found the Board's behavior to be unconscionable.

■ Generally, a board's failure to uniformly enforce zoning regulations does not preclude subsequent enforcement of the same. *Ridley Township v. Pronesti,* 431 Pa. 34, 244 A.2d 719 (1968); *Kar Kingdom, Inc. v. Zoning Hearing Board of Middletown Township,* 88 Pa.Commonwealth Ct. 364, 489 A.2d 972 (1985); *Braccia v. Upper Moreland Zoning Hearing Board,* 16 Pa.Commonwealth Ct. 214, 327 A.2d 886 (1974). An exception to that general rule occurs when a governmental body administers a facially neutral law in such a way as to amount to a violation of constitutional rights. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886);[5] *Ignelzi,* 90 Pa.Commonwealth Ct. 350, 495 A.2d 634; *Ridley Township.*

■ Relying on *Ignelzi,* the Borough argues that the trial court erred in finding the existence of conscious discrimination. In *Ignelzi,* we denied relief to a property owner claiming an equal protection violation because the property owner failed to allege that the zoning enforcement decision was based "upon conscious discrimination against an identifiable group." *Ignelzi,* 90 Pa.Commonwealth Ct. at 355, 495 A.2d at 636 (citing *Yick Wo* ).

We acknowledge that this Court in *Ignelzi* seems to require the existence of a class as a prerequisite to invalidating an ordinance on equal protection grounds. Given the narrow circumstances in this case, however, where the trial court found conscious discrimination, we conclude that the "person" discriminated against may be a single zoning applicant. The

5. In *Yick Wo,* a San Francisco ordinance required prior consent of the Board of Supervisors for the operation of hand laundries in wooden buildings. The Board of Supervisors gave permits to all but one of the non-Chinese applicants, but to none of the nearly two hundred Chinese applicants. The United States Supreme Court found a violation of the Equal Protection Clause because, although the ordinance was neutral on its face, the Board of Supervisors was administering it in a discriminatory manner.

conscious discrimination against Owner is in no way diminished by his failure to fit within an identifiable class.

In *Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F.Supp. 1118 (W.D.Pa.1980), the district court noted that, notwithstanding lack of membership in a suspect class, a person may still claim protection under the equal protection clause. Specifically, the court noted that

> [t]he existence of a suspect class or fundamental right merely affects the level of scrutiny to which an apparently uneven application of the law will be subjected; it is in no way relevant to one's initial right to claim the protection.

*Id.* at 1133.

Similarly, in a case involving a deprivation of substantive due process, the United States Court of Appeals for the Third Circuit recognized a constitutional violation against one applicant because it demonstrated that the municipality "process[ed] an application for a building permit pursuant to a constitutionally adequate procedure, but deliberately and arbitrarily abuse[d] government power to deny the application." *Bello v. Walker*, 840 F.2d 1124 (3rd Cir.1988), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988). *See also, Hardee's Food Systems, Inc. v. Department of Transportation*, 495 Pa. 514, 434 A.2d 1209 (1981), (holding that the Commonwealth could not deprive a single landowner of its constitutionally protected property right without affording due process). Additionally, the Fourteenth Amendment itself provides as follows:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any *person* of life, liberty, or property without due process of law; nor deny to any *person* within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV (emphasis added). Thus, the fact that Owner apparently was not a member of an identifiable group did not preclude the trial court from finding the occurrence of conscious discrimination.

■ The Borough also argues that the trial court erred in finding conscious discrimination because nothing the Board did was that egregious. For purposes of understanding the trial court's determination that the Board "encouraged Petitioner to appeal an adverse decision and accepted money for the privilege of appealing," some explanation of what occurred at earlier Board hearings, involving Owner's first request for a somewhat different variance, is necessary.

On March 26, 1991, the Board held a hearing for purposes of taking a public vote and distributing a written decision on Owner's request for a side-yard variance on the Bobwhite Street side of his property. At that hearing, the Board denied Owner's request for that variance because he had other uses for his property without the variance. Following the Board's denial of that request, however, counsel for Owner inquired into what the Board's position would be regarding an addition on the rear of the existing structure.[6]

The conversation between the two attorneys was as follows:

ATTORNEY WALKER: Fine. Tim, [Attorney Leventry] while we have you here, what's the position of the Board if we would build the addition on the rear of the property; on the existing structure, on the easterly side of the map. Everybody has a map there, I believe.

ATTORNEY LEVENTRY: Let me just ask you, how far is it from the back of the property to—I mean to the back of his property line. The back of the structure to the back of the property line.

. . . . .

ATTORNEY LEVENTRY: Well, let me just say this. Without even being before the Board, the Borough Ordinance only requires an 18 foot setback on the rear. And this is a commercial district, so therefore, as long as you have the appropriate buffers, you know, with an 18 foot setback you may not need a variance.

---

6. The Board's subsequent denial of this second request for a variance is what is at issue in this appeal.

ATTORNEY WALKER: So we could build on the existing structure and go back as close as 18 feet to Lot No. 6. Correct?

ATTORNEY LEVENTRY: Let me just double check that for you. For your information, too, you may want to note this. Ordinance 350, with regard to the rear yard setback in a commercial district was changed by Ordinance 397 from 25 to 18 feet. So with that in mind, you know, you could proceed with a building permit request from Mr. Maloy. As long as it satisfies the Ordinance, there is no need for a variance.

R.R. pp. 64–65.

Accordingly, the Borough's permanent hearing officer issued Owner a building permit on April 2, 1991, a few days after the March 26, 1991 hearing. Approximately ten days later, however, after Owner had caused a tree on the building site to be excavated and had started to dig out the foundation for the extension, the Borough rescinded the permit. R.R. p. 168. After this rescission, Owner sought side-yard setback variances of both the north and south sides of his property for the extension of the existing building out the back of the property. Apparently, even though the Board previously had no problem with an extension out the back, it later decided that Owner could not make the changes. R.R. p. 72.

The trial court was also concerned by the Board's May 23, 1991, presentation of the six-page typewritten decision to Owner after only a few minutes of private deliberation. The Borough contends that the Board prepared several alternate decisions in advance and only decided that night as to which path it would follow. Because the trial court found the decision to be so elaborate (with the 2–1 adverse vote typed in advance), it did not find that explanation to be credible.

As we noted previously, although a zoning board has discretion in determining whether to grant variances,[7] a trial court may find it necessary to take additional evidence in order to

7. Section 910.2 of the MPC, 53 P.S. § 10910.2.

properly consider the land use appeal.[8] Here, the court painstakingly took additional evidence as to the Board's general practices and procedures and as to which specific procedures Owner was subjected. Based on that additional evidence, it is clear that Owner was subjected to much more stringent requirements than any of the ten commercial property owners in close proximity who requested and received building permits and/or variances prior to the Board's denial of Owner's request. Further, the record supports the trial court's findings that certain unconscionable irregularities occurred.

Even though the *Bello* court declined to define "the outer limits of the showing necessary to demonstrate that a governmental action was arbitrary, irrational, or tainted with improper motive,"[9] it gave great deference to the factfinder's role of resolving factual disputes. We also recognize that the factfinder is in a better position to make sense of conflicting evidence since he observes the witnesses and hears their testimony. Thus, we decline to disturb the trial court's determination that the Board's behavior was unconscionable and constituted conscious discrimination.

Accordingly, for the reasons stated, we affirm.

## ORDER

AND NOW, this 19th day of April, 1993, the order of the Court of Common Pleas of Cambria County dated June 11, 1992 is hereby affirmed.

---

**8.** Section 1005–A of the MPC, 53 P.S. § 11005–A.

**9.** *Bello,* 840 F.2d at 1129.