**ALPINE, INC., Appellant,**

v.

**ABINGTON TOWNSHIP ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1994.

Decided Jan. 20, 1995.

Reargument Denied March 20, 1995.

Marc D. Jonas, for appellant.

Bruce J. Eckel for appellee, Zoning Hearing Bd. of Abington Tp.

R. Rex Herder, Jr. for intervenor, Tp. of Abington.

Before DOYLE, and McGINLEY, JJ., and DELLA PORTA, Senior Judge.

DOYLE, Judge.

Alpine, Inc. (Alpine) appeals an order of the Court of Common Pleas of Montgomery County affirming the decision of the Abington Township Zoning Hearing Board (Board) which denied an application to build a single family house on an unimproved and undersized piece of property. We affirm.

On August 30, 1991, Alpine purchased an unimproved lot [1] located on Edge Hill Road in Abington Township. By a separate transaction on that same date, the president of Alpine, Franco D'Andrea, and his wife purchased the adjacent property [2] located at 1122 Edge Hill Road. This second lot has an existing single family residence built on it. Prior to their sale in 1991, the lots were held

---

1. The unimproved lot is Unit No. 7 on Block No. 269 of the Abington Township Tax Map. Alpine paid $5,000 for it.

2. This property is Unit No. 5 on Block No. 269 of the Abington Township Tax Map. The D'Andreas paid $130,000 for this property.

in common ownership by Sally Sheppard[3] and were used as a single, integrated parcel.

Although Alpine's appeal concerns the unimproved lot, the historical relationship of both lots is relevant to the resolution of this case. From 1937 until 1978, the lots were held in common ownership by William and Myrtle Connell. The Connells built a single family home on one of the lots (Lot 5), but left the remaining lot (Lot 7) unimproved. The two lots were enclosed by a fence and formed a single, integrated parcel. In 1978, Walter Connell, executor of Myrtle Connell's estate[4], attempted to sell the properties to Gary and Shelly Young. Due to a conveyancing error, the deed which was given to the Youngs conveyed only the improved lot, not the unimproved lot. Nevertheless, the Youngs took possession of both lots. In 1987, the Youngs sold the improved property to Sally Sheppard. Like the Connells, the Youngs believed that they were transferring both lots. Furthermore, the Youngs, and later Sheppard, continued to use and maintain the unimproved lot as a side yard of their home on the improved lot. In February of 1991, the mistake in the 1978 deed of conveyance was finally discovered, and a deed of confirmation was executed by the executor of Myrtle Connell's estate.

The unimproved lot is 49.76 feet wide and has an area of 5,736 square feet. Under Section 305.3(A) of the Abington Township Zoning Ordinance, a building cannot be erected on property which has a width of less than 50 feet and which has an area of less than 7,500 square feet. Therefore, Alpine's

lot is deficient in area by 1,764 feet and deficient in width by .24 feet for purposes of the Zoning Ordinance.

■ Alpine applied to the Board for a variance allowing it to build a single family house on its lot, and a hearing was held on November 19, 1991. The Board denied the application and Alpine appealed. By stipulation of the parties, the case was remanded back to the Board for a second hearing held on April 21, 1992. On remand, in addition to arguing for a variance, Alpine argued that it had an absolute right to build on the property since Lot 7 was owned in single and separate ownership on August 10, 1978, the date the Zoning Ordinance was enacted. Nevertheless, the Board again denied the application. Alpine appealed to the court of common pleas which affirmed without taking additional evidence. This appeal followed.[5]

Two issues are presented on appeal. First, whether the property, a nonconforming lot, was owned in single and separate ownership on the date the Zoning Ordinance was enacted, thus entitling Alpine to build a single family house as a matter of right. Second, whether the Board was biased against Alpine, and thus, improperly discriminated against Alpine when it denied Alpine's application for a variance.

■ Regarding Alpine's first argument,[6] Section 106.2 of the Zoning Ordinance states:

A building may be erected or altered on any lot or contiguous lots held at the effective date of this ordinance or any amendment thereto in *single and separate own-*

---

3. Prior to selling the two lots, Sheppard married and changed her name to Sally Sheppard Sternfeld.

4. William Connell died October 4, 1974, and Myrtle Connell died January 7, 1978.

5. Our scope of review in a land use appeal where the court of common pleas took no additional evidence is limited to a determination of whether the Board committed an error of law or manifestly abused its discretion. *A.R.E. Lehigh Valley Partners v. Zoning Hearing Board,* 139 Pa.Commonwealth Ct. 361, 590 A.2d 842 (1991).

6. We note that Alpine in its brief cites as authority and relies upon an unreported opinion of this Court, *Seaver v. Abington Township Zoning Hearing Board* (No. 1616 C.D.1990, filed July 16, 1991). This is a violation of Section 414 of this Court's Internal Operating Procedures, which prohibits the use of unreported opinions of the Court in "any brief, argument or opinion, except that any opinion filed in the same case may be cited as representing the law of the case." 210 Pa.Code, § 67.55. Unreported opinions are accorded no precedential value by this Court and attorneys who utilize them in their briefs or in oral argument do themselves and their clients a disservice.

*ership,* which lot is not of the required minimum area or width or is of such unusual dimensions that the owner would have difficulty in providing the required open spaces for the district in which such lot is situated, provided that the building shall comply with the front, side and rear yard requirements of the district in which such lot is situated.... (Emphasis added.)

The Zoning Ordinance was enacted on August 10, 1978.[7] At that time, the property at 1122 Edge Hill Road was owned by the Youngs. However, due to the conveyancing error by Walter Connell when transferring the property, Connell remained the owner of record of the adjacent unimproved lot. According to Alpine, this fact negates any claim that the properties were subject to common ownership and had merged for purposes of the Zoning Ordinance. In further support of its position, Alpine points to the fact that the two lots are separate tax parcels and have been subject to separate sewer assessments. Alpine concludes from this that the lot was owned under single and separate ownership in August of 1978. Therefore, Alpine believes that it is entitled under Section 106.2 of the Zoning Ordinance to build a home on the unimproved lot without the need for a variance. We disagree.

■ The critical time period in our analysis is August 10, 1978, the date the Zoning Ordinance was enacted. If Alpine's property were actually held in single and separate ownership at that time, then Alpine would be entitled to build on the property. *See Montoro v. Bethlehem Township Zoning Hearing Board,* 132 Pa.Commonwealth Ct. 616, 574 A.2d 116 (1990). Alpine argues that the defective deed given by Walter Connell to the Youngs on May 30, 1978, divested the Youngs and their successors in interest of common ownership over both properties. However, the deed of confirmation issued by Walter Connell to Sally Sheppard on February 8, 1991, cured any defect in the title to the unimproved lot which had been created

by the defective deed given by Connell to the Youngs.

The record clearly shows that Connell intended to convey both lots to the Youngs in 1978, that the Youngs intended to buy both lots, and that both parties believed they had accomplished this and had properly consummated their agreement. Also, the Youngs, and Sheppard after them, took possession of the unimproved lot and treated it as their own. We thereby conclude that the Youngs were the equitable and actual owners of the unimproved lot in 1978 when the Zoning Ordinance was enacted. Thus, despite the apparent separation in ownership of the two lots created by the 1978 deed, the Youngs held the two parcels as a single, integrated parcel at the time the Zoning Ordinance was enacted.

■ Alpine also argues that since the two lots had separate tax parcel numbers and sewer assessments, the lots cannot be considered a single tract of land. However, this Court has found such attributes to be immaterial in determining whether two properties are considered one property for zoning purposes. *See Jacquelin v. Zoning Hearing Board,* 126 Pa.Commonwealth Ct. 20, 558 A.2d 189 (1989), *petition for allowance of appeal denied,* 525 Pa. 606, 575 A.2d 571 (1990); *West Goshen Township v. Crater,* 114 Pa.Commonwealth Ct. 245, 538 A.2d 952 (1988). For us to find that two properties are held in "single and separate ownership," there must be some kind of physical manifestation showing an intention to keep them separate and distinct. *Jacquelin.* In this case, there are no such physical manifestations which would warrant such a conclusion. The two lots have been fenced in and maintained as one unit for over fifty years. Furthermore, despite the error in the 1978 deed, nothing in the record indicates that any of the owners prior to Alpine ever intended to hold the unimproved lot in single and separate ownership. We, therefore, reject Alpine's contention that the property was ever held in single and separate ownership and

---

7. The provisions in Section 106.2 of the 1978 Zoning Ordinance are identical to those found in

Section 1502 of the prior Zoning Ordinance enacted in 1966.

find that Alpine is not entitled as a matter of right to build on the property.

■ Alpine's second argument is that it should have been granted a variance. Alpine points out that one-third of the lots in the immediate area are similarly undersized for purposes of the Zoning Ordinance, but nonetheless have single family homes built on them. Alpine further notes that just three years earlier the Board approved a variance for a subdivision creating a 6,612 square foot lot on property adjacent to Alpine's land.[8] Alpine contends that the denial of a variance under these circumstances was fundamentally unfair and a denial of its equal protection rights.

Alpine relies on *Knipple v. Geistown Borough,* 155 Pa.Commonwealth Ct. 120, 624 A.2d 766 (1993). In *Knipple,* we upheld the trial court's granting of a variance where it found that the Zoning Hearing Board had consciously discriminated against the applicant. In that case, at least ten properties in the immediate area had recently received variances or building permits similar to the one denied. Furthermore, the Zoning Hearing Board subjected the applicant to more rigorous requirements than others and had a detailed written opinion rejecting the application prepared prior to the hearing.

■ However, *Knipple* is inapplicable to this case. First, only one property owner, not ten owners, has recently received a variance in the immediate vicinity of Alpine's property. Thus, there does not exist a routine pattern of granting variances as existed in *Knipple.* Second, and more important, there is nothing in the record which indicates that the Board discriminated against Alpine or acted improperly in reaching its decision.[9]

■ To obtain a variance, the landowner carries the heavy burden of proving that he suffers from an unnecessary hardship, the hardship is not self-imposed, and granting the variance will not adversely affect the public health, safety, and welfare. *Bruni v. Zoning Hearing Board of Plymouth Township,* 52 Pa.Commonwealth Ct. 526, 416 A.2d 111 (1980). Also, a substantial, serious, and compelling reason must be shown before a variance will be granted. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). In this case, Alpine has failed to meet this burden.

■ Alpine does not suffer from an unnecessary hardship. For an unnecessary hardship to exist, the property must be rendered " 'practically valueless' without the

---

8. Alpine's lot was only 5,736 square feet.

9. Alpine in its brief points to several places in the record which it believes shows the Board's predisposition against it. For instance, during the testimony of a neighbor who opposed granting the variance, the Board's Chairman spoke of "protecting the witness" when Alpine's lawyer made objections. (Hearing on 4/21/92, at 56.) After a brief interchange between the Chairman, the Board's Solicitor, and Alpine's lawyer, the hearing continued. However, at no time did the Chairman prevent Alpine's lawyer from making objections or cross examining witnesses.

Alpine also points to a statement of the Chairman at the first hearing before the Board (11/19/91) in which he said:

What we want to do is we'll take all the testimony and then we'll try to dig into this and get the data that we need in order to make a reasonable decision, an accurate decision and hopefully we'll be able to do that in the time the law allows. If not, we may have to ask you for a continuance or come back after that. (Hearing on 11/19/91, at 27.) Alpine considers this statement as an indication that the Board was willing to conduct an *ex parte* investigation

after the hearing was closed. However, we find that nothing in the chairman's statement implies that he, or the Board, intended in any way to violate ethical principles. The Solicitor immediately warned against considering additional evidence without the benefit of a second hearing. There is nothing in the record to indicate that the Board did not heed the Solicitor's warning. Furthermore, the fact that a second hearing was held demonstrates that the Board based its decision on evidence that was properly before it.

While these incidents may show that the Board was not fully conversant in all aspects of proper administrative procedure, there is nothing in the record which substantiates Alpine's claim that the Board was biased or acted improperly. When questions of proper procedure arose, the Board accepted the guidance of its Solicitor. In addition, Alpine was allowed to fully testify, present evidence, cross examine witnesses, and make objections. In sum, Alpine has failed to point to anything in the record which would substantiate its claim that the hearing was conducted improperly or that the Board's decision was reached in a biased or otherwise improper manner.

variance." *Moses v. Borough of Durmont,* 87 Pa.Commonwealth Ct. 443, 448, 487 A.2d 481, 484 (1985). Furthermore, mere economic hardship by itself is insufficient to warrant the granting of a variance. *Id.* In this case, Alpine paid only $5,000 for the unimproved lot. The lot continues to have value as a side yard of the property next door, owned by the president of Alpine. In fact, as the Board found, the small amount of consideration paid for the unimproved lot showed that it was not considered to be a separate building lot but part of the adjacent parcel sold to the president of Alpine on the same day.

 Any hardship which exists is of Alpine's own making. When Alpine purchased the property in August of 1991, the deed of confirmation to the property had already been executed and recorded. This should have put Alpine on notice that the property had really been held in common ownership with the adjacent lot for over fifty years. Attempts to circumvent the zoning laws by breaking up commonly held property and then requesting a variance for an undersized part of the property are generally disfavored. *See Grace Building Co. v. Zoning Hearing Board of Upper Merion Township,* 38 Pa.Commonwealth Ct. 178, 392 A.2d 888 (1978). In the present case, Alpine purchased the lot in question for minimal consideration and with full knowledge that it did not conform to existing zoning requirements. Alpine hoped to obtain a variance and thereby gain a windfall for its small investment. However, Alpine does not have a right to a variance simply because a variance will enable it to earn a profit. *See Immordino v. Morrisville Zoning Hearing Board,* 65 Pa.Commonwealth Ct. 79, 441 A.2d 818 (1982). In addition, the property continues to have the same value as a side yard which it had when it was purchased. Thus, while concluding that Alpine does not suffer from any unnecessary hardship, we find that any hardship which does exist is self created.

Nonetheless, Alpine argues that its request for a variance is de minimis and should be granted. However, there is no general right to a de minimis variance in this Commonwealth, *see Kline Zoning Case,* 395 Pa. 122, 148 A.2d 915 (1959), and the decision of whether to grant a de minimis variance is left to the discretion of the local zoning board. *See West Bradford Township v. Evans,* 35 Pa.Commonwealth Ct. 167, 384 A.2d 1382 (1978). In the case *sub judice,* the Board chose to deny Alpine's request for a variance. We find no reason to disturb the Board's exercise of its discretion in reaching this decision.

The Board, after extensive hearings, found that granting Alpine a variance would "adversely affect the health, safety or welfare of the community." (Opinion of the Board, Conclusions of Law No. 1). The fact that a prior application by a similarly situated landowner was approved does not invalidate the Board's decision. Alpine's lot was 876 square feet smaller than the lot of the other landowner. Also, the Board could properly conclude that the cumulative effect of an additional house on conditions in the neighborhood warranted denying the application. Since Alpine has failed to show that granting it a variance would not adversely affect the public health, safety, and welfare, we affirm the Board's decision and the order of the court of common pleas denying the variance.

### ORDER

NOW, January 20, 1995, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby affirmed.