In Re: Appeal of Ralph S. MOYER and Alfred O. Werner from the Decision of the Bedminster Township Zoning Hearing Board

Appeal of Bedminster Township.

Commonwealth Court of Pennsylvania.

Argued Feb. 24, 2009.
Decided July 2, 2009.

Peter Nelson, Perkasie, for appellant.

Edward M. Wild, Doylestown, for appellees.

BEFORE: PELLEGRINI, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Bedminster Township appeals an order of the Court of Common Pleas of Bucks County (trial court) holding that two adjoining lots currently owned by two different landowners had not merged for purposes of zoning. In doing so, the trial court reversed the decision of the Zoning Hearing Board of Bedminster Township (Zoning Board) and held that the Board improperly placed the burden of proof on the landowners to establish that their predecessor in title intended to keep the lots in single and separate ownership. Because the trial court misallocated the burden of proof, we will reverse its order and reinstate the Zoning Board's order.

The facts in this case are not in dispute. The two lots in question were created by the Woodland Home Subdivision of 1960 and share a common property line. Alfred O. Werner and Ralph S. Moyer (collectively, Landowners) are the current owners.[1] Werner's lot, with approximately .61 acres of land, was designated as Lot 19 on the original subdivision plan and bears Bucks County Tax Parcel No. 1–21–25. Moyer's lot, measuring approximately .64 acres, was Lot 18 on the subdivision plan and is listed as Bucks County Tax Parcel No. 1–21–24.

On August 28, 2007, Landowners sent a letter to the Bedminster Township Supervisors, requesting that their lots be registered as existing non-conforming lots and that letters be sent to the Bedminster Municipal Authority authorizing the connection of each lot to the public sewer. The Township's Land Use Manager, Dawn Cook, advised Landowners on September 11, 2007, that they had not provided sufficient information to prove that the two lots had not merged into one. Accordingly, Cook advised Landowners that only one sewer line to the two lots would be authorized. Landowners filed an appeal with the Zoning Board, contending that the lots were separate and distinct lots.

---

1. Werner and Moyer are the equitable owners    of their respective lots.

At the hearing before the Zoning Board, Werner testified that although the lots were heavily wooded, unimproved vacant lots, they were nonetheless separate and distinct because they were identified by separate tax parcel numbers; he and Moyer had been separately paying taxes on each lot; and each lot had separate driveway entrances. Werner testified that there were also pins marking the property that had been in place since the lots were separately conveyed in 1999, but he had no idea who had placed the pins or when, or even if the pins were visible.

Dawn Cook, testifying on behalf of the Township, explained her decision to treat the lots as merged. Preliminarily, Cook determined that the lots, each of which measure approximately 25,000 square feet, have been undersized from the date the Township first enacted zoning in 1963. Presently, a lot must measure 32,000 square feet to be developable. Cook stated that the lots were heavily wooded and vacant, with no visible evidence of any dividing line between the properties. Cook also offered into evidence several aerial photographs that corroborated her description of the lots as undeveloped and wooded. Reproduced Record at 99a–101a. (R.R. ___).

Cook next recited the history of the lots from the records of Bucks County, noting that the two lots had been held in common ownership, along with other adjoining lots, from 1960 to 1999. In 1963, Lester and Henrietta Erdman owned the two lots along with other lots in the subdivision. The Erdmans conveyed Landowners' lots, Lots 18 and 19, along with Lots 10, 11, 17, and 23 through 29 to Walter and Mary Bearns by deed dated July 30, 1963. A few days later, on August 8, 1963, the Township enacted its first zoning ordinance.[2] Thereafter, the Bearns continued to hold the lots in common ownership until 1970, when they conveyed Landowners' lots along with Lots 10, 17, and 23 through 29 to Raymond and Marie Bechtel. The Bechtels continued to own all these lots until February 25, 1999 when, for the first time, Lots 18 and 19 were conveyed separately. Lot 18 was conveyed to William Moyer, and Lot 19 was conveyed to Stephanie Benner. Thereafter, the lots were conveyed to Ralph Moyer and Alfred Werner, the current owners.

Cook then testified about the intent of Landowners' predecessors to integrate the

---

**2.** During the hearing before the Zoning Board, the Township's zoning officer testified that the Township's first zoning ordinance was enacted on December 13, 1965. Subsequently, the Township's solicitor discovered that this date was erroneous, apprised the trial court of the correct date in 1963, and provided the trial court with relevant sections of the 1963 zoning ordinance. Landowners objected to the correction of the record and submission of the 1963 ordinance, alleging that because the trial court took additional "evidence," the trial court employed an improper appellate review rather than *de novo* review, warranting a remand. We disagree.

With regard to the correction of the record, the correction has no effect on the outcome of this case because whether the ordinance was enacted in 1963 or 1965, the Bearns held the lots in common ownership prior to enactment of zoning in the Township. Moreover, under the Rules of Professional Conduct counsel was obligated to correct the error. Rule 3.3 provides in relevant part that "[a] lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal or *fail to correct a false statement of material fact or law previously made to the tribunal* by the lawyer." PA R.P.C. 3.3(a) (emphasis added).

In addition, the presentation of the 1963 zoning ordinance to the trial court does not constitute supplementation of the record. Courts may take judicial notice of local government ordinances. Section 6107 of the Judicial Code, 42 Pa.C.S. § 6107; *Zitelli v. Zoning Hearing Board of Borough of Munhall*, 850 A.2d 769, 771 n. 2 (Pa.Cmwlth.2004).

lots into one large lot. According to the Township's records, Raymond Bechtel, who held the lots in common ownership with his wife from 1970 through 1999, entered into an agreement with the Township on January 13, 1993, to build and maintain a sewage treatment plant. Under the terms of this agreement, Bechtel stated that he was the

> owner and has title in fee simple to a parcel of land situate in Bedminster Township, Bucks County, Pennsylvania, which tract is currently unimproved, and the owner desires to improve said property by the construction of a single family residence, and which is more particularly identified as Bucks County Tax Map Parcel Nos. 01–21–7, 01–21–16, 01–21–23, 01–21–24 and 01–21–24[sic].[3]

R.R. 102a. Bechtel intended to construct and install a spray irrigation system to service a single-family house on the combined five lots, for which he obtained a permit from the Pennsylvania Department of Environmental Resources (DER permit). The sewage treatment plan, the maintenance agreement therefor and the DER permit were each recorded in the Bucks County Recorder of Deeds office. Although Bechtel did not complete the project, Cook considered these documents evidence of the Bechtels' intent to integrate the five lots, including Landowners' lots, into one parcel.

Cook testified that the final factor that went into her determination that the lots had merged was the existence of an oil pipeline easement and electric pole right of way on Lot 19. The right of way crosses Lot 19 diagonally, making it extremely unlikely that a house could ever be built on the lot given the setback requirements.

The Zoning Board concluded that Landowners' parcels were part of a larger, integrated tract prior to and up to the time of the adoption of the Township's first zoning ordinance and were not separate and distinct properties. The Board noted that there was no evidence of an overt, unequivocal, physical manifestation of an intent to keep the parcels separate and distinct either prior to or after the enactment of zoning. Thus, the Board concluded the lots had merged when the zoning ordinance was enacted. Alternatively, the Board determined that the Bechtels' efforts to build a sewage treatment system, for which they obtained a permit from DER, evidenced their intention to integrate the lots into one large building tract in 1993. Under either theory, Lots 18 and 19 were merged.

The trial court reversed, concluding that the Board improperly placed the burden of proof on Landowners. The court concluded that as the party asserting a physical merger, the Township had the burden to establish the previous landowners' intent to integrate the adjoining lots into one large parcel and that the Township's evidence was insufficient. The present appeal followed.

On appeal, the Township presents two issues for our consideration.[4] First, it contends that the trial court erred in placing the burden on the Township to prove that the predecessors in title intended to merge

---

3. Cook indicated that the agreement contained a typographical error, repeating Tax Map Parcel No. "1–21–24." She confirmed that the agreement covered Tax Map Parcel No. 1–21–25. Parcel 1–24–24 signified Moyer's parcel, or Lot 18, and Parcel 1–24–25 signified Werner's parcel, or Lot 19.

4. Our review in a land use appeal where the common pleas court took no additional evidence is limited to a determination of whether the Zoning Board committed an error of law or manifestly abused its discretion. *In re Puleo*, 729 A.2d 654, 656 n. 3 (Pa.Cmwlth. 1999).

Landowners' adjoining lots into one large parcel. Second, the Township contends that even if it had the burden of proof, which it does not concede, the evidence supports the conclusion that the lots had merged for purposes of zoning.

■ With respect to the first issue, the Township contends that the burden of proof was upon Landowners. This Court's decision in *Cottone v. Zoning Hearing Board of Polk Township*, 954 A.2d 1271 (Pa.Cmwlth.2008), teaches that Landowners had the burden of proving that their predecessor in title intended to keep the parcels separate and distinct because the adjoining lots were held in common ownership prior to the enactment of the Township's first zoning ordinance, which rendered the properties nonconforming in size.

In *Cottone*, this Court reviewed and restated the principles regarding merger in this Commonwealth:

> In general, mere common ownership of adjoining properties does not *automatically* result in a physical merger of the properties for zoning purposes.... On the other hand, adjoining properties under common ownership can merge when a zoning ordinance provision causes one or more of the adjoining lots to become undersized, depending on the facts and circumstances of each case.... The focus of the inquiry is upon (1) when the properties in question came under common ownership and (2) the effective date of the applicable zoning ordinance.

> Adjoining lots under separate ownership before a zoning ordinance enactment makes the lots too small to build upon are presumed to remain separate and distinct lots. Should those adjoining, undersized lots be thereafter acquired by a single owner, the burden is on the municipality to show that the new common owner has merged the two lots into

one.... Otherwise, the result would be to permit separate development of each lot by any person other than the common owner....

\* \* \*

On the other hand, lots are presumed to merge as necessary to comply with a zoning ordinance's lot size requirements where they are under common ownership prior to the passage of the ordinance. It is the landowner's burden to rebut this presumption by proving intent to keep the lots separate and distinct.... In doing so, the landowner's subjective intent is not determinative; rather, there must be proof of some overt or physical manifestation of intent to keep the lots in question separate and distinct.

*Id.* at 1275–1276 (citations and footnote omitted) (emphasis in original).

■ In short, lots under separate ownership at the time a zoning ordinance is enacted that makes them too small for building are presumed to remain separate. Lots under common ownership at the time zoning is first implemented are presumed to merge, as needed to conform to the zoning ordinance. Further, it is the landowner's burden to rebut the presumption that undersized lots have merged by operation of the zoning ordinance.

Given these principles, the trial court erred in placing the burden on the Township to show that Lots 18 and 19 merged. Prior to enactment of zoning in the Township in 1963, these two lots were held in common ownership, first by the Erdmans and then by the Bearns. Because the lots were held in common ownership at the time the Township enacted zoning that made the lots nonconforming, the lots were presumed to have merged to comply with the zoning ordinance. *Cottone*, 954

A.2d at 1275–1276. Thus, Landowners had the burden to rebut the presumption of merger by offering proof of some overt or physical manifestation of intent by their predecessors to keep the lots separate and distinct while under common ownership. *Id.* at 1276.

Landowners did not rebut the presumption of merger. Their evidence showed that each lot had a separate subdivision lot and tax parcel number; each lot had been separately assessed by the Board of Assessment; each lot had separate driveway entrances; and the boundary between the lots was marked with surveyor's pins. These facts, however, were insufficient to rebut the presumption that the lots had merged in 1963.

■ First, having separate tax parcel numbers and being separately taxed is not relevant in determining whether or not two properties have merged. *Alpine, Inc. v. Abington Township Zoning Hearing Board*, 654 A.2d 186, 189 (Pa.Cmwlth. 1995); *Cottone*, 954 A.2d at 1279. Second, the driveways were installed by the current owners of each lot and, thus, do not relate to the intent of the predecessors in title. Finally, although surveyor's pins are typically installed when lots are surveyed, Landowners presented no evidence about when the pins were placed or who placed them, so their evidentiary value is limited.

■ A physical manifestation of the intent to keep adjoining lots separate and distinct consists of a tangible boundary such as a line of trees, a fence or a wall separating the lots. *Tinicum Township v. Jones*, 723 A.2d 1068, 1072–1073 (Pa. Cmwlth.1998); *West Goshen Township v. Crater*, 114 Pa.Cmwlth. 245, 538 A.2d 952, 955 (1988). Landowners were required to

present evidence at the hearing that the Bearns, who owned the lots when zoning was enacted in the Township, intended to keep the lots separate. *Cottone*, 954 A.2d at 1276. Because Landowners failed to present any evidence of their predecessors' intent, subjective or otherwise, Landowners failed to meet their burden of proof and the Zoning Board correctly concluded that the lots had merged.

Landowners argue that the above-cited cases are distinguishable. In support, they observe that the current zoning ordinance (Zoning Ordinance) does not have a merger provision,[5] as did the ordinance at issue in *Cottone*. In addition, they contend that the Zoning Ordinance expressly permits the separate development of Lots 18 and 19.

We consider, first, whether the Zoning Ordinance expressly permits Landowners to build a house on each of their lots. Section 501 forbids construction on a lot that does not meet the minimum size requirements. It states, in relevant part, as follows:

> Where a minimum lot size is specified, no primary building or use shall be erected or established on any lot of lesser size than as specified in Section 513 of the Zoning Ordinance [relating to the table of dimensional requirements], except as specified in Section 503 regarding flag lot standards.

ZONING ORDINANCE, § 501. However, the Zoning Ordinance creates an exception for lawful, nonconforming lots that do not meet the minimum size requirements. Section 502 of the Zoning Ordinance states as follows:

> The provisions of Section 501 and Article V shall not prevent the construction

---

**5.** THE ZONING ORDINANCE OF THE TOWNSHIP OF BEDMINSTER, PENNSYLVANIA (2006) (ZONING ORDI-    NANCE).

of a single-family dwelling on any lot *that was lawfully created under a previous Zoning Ordinance* of Bedminster Township but does not meet the requirements of the Ordinance under which the lot as created shall regulate the building on that lot.

ZONING ORDINANCE, § 502 (emphasis added). Landowners contend that because their lots were created prior to the enactment of any zoning in the Township, they were lawful "as created." They reason that they are exempted from Section 501's building limitation under the express terms of Section 502. There are several problems with Landowners' theory.

First, Section 502 refers to lots that were created in accordance with the requirements of a previous zoning ordinance. Here, by contrast, Lots 18 and 19 were created before zoning. They were never in compliance with any zoning ordinance. The exception in Section 502 does not apply to Lots 18 and 19.

Second, the Township's 1963 zoning ordinance contained a merger provision. In relevant part it provided:

43.00 *Non–Conforming Lots Regulations.* In any district, in which single-family houses are permitted, notwithstanding the area limitations imposed by other provisions of this ordinance, a single-family house and customary accessory buildings may be erected on any lot in single and separate ownership on the effective date of this ordinance, in existence at the effective date of

adoption or amendment of this ordinance, *provided the following requirements shall be observed:*

43.01 *Such lot must be in separate ownership, and not form part of a continuous frontage with other lots in the same ownership.*

43.02 This provision shall apply even though such lot fails to meet requirements of area or width, or both, generally applicable in the district in which the lot is located, and a variance shall be issued by the Board of Adjustment, except as follows:

\* \* \*

43.022 If two or more lots with continuous frontage in single ownership are of record at the time of passage or amendment of this ordinance, and if all or part of the lots do not meet the requirements for lot width and area established by this ordinance, *the lands involved shall be considered an undivided parcel, and no portion of such parcel shall be occupied or sold which does not meet lot width ·and area requirements established by this ordinance*

R.R. 118a (emphasis added). In 1963, Landowners' lots were not held in separate ownership but in common ownership with continuous frontage. Thus, when zoning was enacted in 1963, Landowners' lots were merged under the above-quoted provisions of the Township's new zoning ordinance.[6]

---

6. Landowners also argue that the Township is equitably estopped from contending that Landowners' lots merged because the Township has treated all lots in the development as separate, stand-alone, non-conforming lots. Landowners base this argument on evidence that is not part of the certified record. It is beyond cavil that an appellate court is limited to considering only those facts which have been duly certified in the record on appeal. *Pugh v. Workers' Compensation Appeal Board (Transpersonnel, Inc.)* 858 A.2d 641, 645 n. 7 (Pa.Cmwlth.2004).

Finally, Landowners' argument misapprehends the law of nonconforming use. Under the Zoning Ordinance, a nonconforming use is a "building or other structure, use, or lot, lawful when created, which for reason of design, size or use does not conform with the requirements of the district or districts in which it is located." ZONING ORDINANCE, § 235; *see also* ROBERT S. RYAN, PENNSYLVANIA ZONING LAW AND PRACTICE 7.1.1 (1981).[7] Generally, the right to continue a nonconforming use, once established and not abandoned, runs with the land and this right is not confined to any one individual or corporation. *Eitnier v. Kreitz Corp.*, 404 Pa. 406, 412, 172 A.2d 320, 323 (1961). However, a nonconforming use must be in effect before the enactment of the relevant zoning restriction or any pertinent amendment to the zoning restriction. *Township of Haverford v. Spica*, 16 Pa.Cmwlth. 326, 328 A.2d 878, 881 (1974). Stated otherwise, the landowner must present objective evidence that the land was devoted to the nonconforming use at the time the zoning ordinance was enacted. *Smalley v. Zoning Hearing Board of Middletown Township*, 575 Pa. 85, 90, 834 A.2d 535, 538–539 (2003). The importance of objective evidence in this area of law was stated by Justice Musmanno, who, in his inimitable way, explained:

> Advanced as may be the science of interpretation of psychic phenomena, the courts cannot be expected, nor are they equipped, to look into a person's mind to ascertain his thoughts and intentions. Only physical evidence manifested in the most tangible and palpable form can bring about the application of nonconforming clauses in a zoning ordinance.

Before a supposed nonconforming use may be protected, it must exist somewhere outside the property owner's mind.

*Cook v. Bensalem Township Zoning Board of Adjustment*, 413 Pa. 175, 179, 196 A.2d 327, 329–330 (1963).

Here, Landowners failed to present evidence that the lots were ever used, maintained or treated as separate and distinct properties until 1999, when for the first time the lots were conveyed by separate deed to separate owners. In the absence of this evidence, the Board correctly concluded the lots had merged.

However, even assuming, *arguendo*, that the lots did not merge upon enactment of zoning and that the Township had the burden of proof, the Township satisfied this burden. The Township introduced objective and unrebutted evidence that Landowners' predecessor had merged Lots 18 and 19, along with adjoining lots into one large lot. The Township proved a change in the legal status of the two lots, showing that they had merged with three other lots. This was proved by the Bechtels' sewage treatment plan, system maintenance agreement and DER permit, all of which were filed and recorded in the Bucks County Recorder of Deeds Office, effectively superseding the separate deeds for Lots 18 and 19. In addition, the Township presented physical evidence that a merger had occurred in that utility easements diagonally cross Lot 19. The easements have effectively barred the construction of a house on that lot given the setback requirements in the Zoning Ordinance. In short, the Township did prove that Landowners' lots merged after enactment of zoning and that a separate and

---

7. Section 7.1.1 provides in relevant part:
   A nonconforming use is any activity or structure which came into existence prior to the zoning restriction involved, but which now violates that restriction. The most common example is the use which antedates any zoning. . . .
   RYAN, § 7.1.1.

distinct use had been abandoned. *See, e.g., Alpine, Inc. v. Abington Township Zoning Hearing Board,* 654 A.2d 186 (Pa. Cmwlth.1995) (property fenced in and maintained as one lot evidenced abandonment of separate lots thus effecting a merger); *Jacquelin v. Zoning Hearing Board of Hatboro Borough,* 126 Pa. Cmwlth. 20, 558 A.2d 189 (1989) (adjacent lot treated as side yard and maintained with primary residential lot evidenced a merger).

Accordingly, the order of the trial court is reversed and the order of the Zoning Board reinstated.

### ORDER

AND NOW, this 2nd day of July, 2009 the order of the Court of Common Pleas of Bucks County dated July 10, 2008, is hereby REVERSED and the order of the Zoning Hearing Board of Bedminster Township reinstated.