**In re Appeal of McGrath**

*Russell P. Sacco,* for plaintiff.

*John A. VanLuvanee* and *Kellie A. McGowan,* for defendant.

CEPPARULO, *J.,* September 29, 2009—

## I. PROCEDURAL HISTORY

Appellant J.W. McGrath Organization owns an equitable interest in a 2.046 acre parcel of land situated along

the western side of Oxford Valley Road and Queen Anne Drive in Bristol Township, Bucks County, Pennsylvania. This land is located in a C-Commercial zoning district under the Bristol Township Zoning Ordinance. McGrath planned to demolish an existing medical office on the subject property to construct a new CVS Pharmacy in its place. McGrath now appeals from appellee Bristol Township Council's denial of this plan.

In March 2008, in accordance with the Pennsylvania Municipalities Code (MPC) and the Bristol Township Subdivision and Land Development Ordinance (SAL-DO), McGrath submitted its application for preliminary/final land development approval to construct a new CVS Pharmacy. On April 11, 2008, the Bucks County Planning Commission issued a report on the development plans raising several concerns regarding the size and location of the loading zones, as well as concerns with the proposed storm water management facilities.

On May 11, 2008, the proposed land development plans were presented to the Bristol Township Planning Commission, which identified the same issues regarding the loading zone and storm water management problems, as well as concerns regarding the traffic impact of the proposed land development. As a result, the Bristol Township Planning Commission did not recommend approval of McGrath's land development plans.

From the submission of the land development plan to the Bucks County Planning Commission, through the review by the Bristol Township Planning Commission,

and ultimately up to the hearing before appellee Bristol Township Council, McGrath continued to work with the township and the township engineer to revise the land development plans. Each time McGrath revised its land development plans, the township engineer issued a review letter identifying SALDO violations and highlighting the presented plan's need for waivers from the SALDO requirements and variances from the Bristol Township Zoning Ordinance in order to obtain approval for the plans as submitted.[1]

On August 27, 2008, McGrath submitted its final revised plans and request for waivers to appellee Bristol Township Council.[2] On October 16, 2008, the final revised plans were reviewed by appellee council at a public hearing. After hearing testimony regarding the development plans and the requested waivers for the loading zones, storm water management system, and open space requirements, council voted unanimously to deny McGrath's waiver requests and reject its land development plan. On October 22, 2008, council delivered to McGrath a written decision outlining the reasons for council's denial. McGrath did not seek to revise or amend its land development plans, but instead, McGrath filed the present appeal to this court. No additional evidence was received in this case.

---

1. The township engineer review letters were issued on March 17, 2008, April 11, 2008, June 16, 2008, July 16, 2008 and September 5, 2008.

2. McGrath never presented any plans to the Bristol Township Zoning Hearing Board.

## II. QUESTIONS PRESENTED

Appellant J.W. McGrath has identified two issues for this court's review:

(1) Whether the actions of appellee Bristol Township Council violated McGrath's equal protection rights under the United States Constitution?

(2) Whether council abused its discretion in denying McGrath's waiver request and rejecting its land development plans?

## III. EQUAL PROTECTION

No additional evidence was received in this matter, limiting this court's scope of review to a determination of whether the township council abused its discretion or committed an error of law. *Rouse/Chamberlain v. Board of Supervisors of Charlestown Township,* 94 Pa. Commw. 413, 504 A.2d 375 (1986). The conclusion that the township council abused its discretion may only be reached if its findings are not supported by substantial competent evidence. *Money v. Zoning Hearing Board of Haverford Township,* 755 A.2d 732 (Pa. Commw. 2000).

McGrath argues that council's denial of the requested waivers amounted to an equal protection violation. McGrath cites to the approval of zoning variances by the Bristol Township Zoning Hearing Board in 2004 and 2005 for two Walgreen's Pharmacies, competitors to McGrath's proposed CVS Pharmacy, as evidence that the Bristol Township Council consciously discriminated against McGrath.

Land use matters may raise equal protection concerns, even in situations where there is no protected class involved, such as the present case. *Knipple v. Geistown Borough Zoning Hearing Board,* 155 Pa. Commw. 120, 124, 624 A.2d 766, 768 (1993). Ordinarily, a grant of a variance or waiver to one property does not obligate the grant to another property, as each request must be decided on its own merit. *Vito v. Zoning Hearing Board of the Borough of Whitehall,* 73 Pa. Commw. 270, 272, 458 A.2d 620, 621 (1983). Where, however, a board acts in an "arbitrary and irrational manner in subjecting a variance applicant to much more stringent requirements than . . . other similarly situated applicants," the board's actions may violate the applicant's equal protection rights. *Korsunsky v. Housing Code Board of Appeals,* 660 A.2d 180, 183 (Pa. Commw. 1995). Nevertheless, it still remains the applicant's burden to demonstrate "conscious discrimination, unrelated to any legitimate objective" in order to succeed in its equal protection claim. *Id.*

In *Knipple,* the court found that 10 properties in close proximity to the applicant's property received the same variance relief that applicant was requesting. *Knipple,* at 123-24, 624 A.2d at 768. The court also found that the applicant was initially granted a required building permit, only to have it rescinded by the board after the applicant began construction. *Id.* Finally, the zoning hearing board encouraged applicant to appeal the decision and accepted money from the applicant for the "privilege of appealing," even though the board already decided to deny the variance request and already completed writing a six-page decision denying the appeal. *Id.*

In the present matter, appellant offers the grant of variances by the Bristol Township Zoning Hearing Board in 2004 and 2005 to two Walgreen's Pharmacies as the sole evidence that the Bristol Township Council consciously discriminated against McGrath in denying its requested waivers. McGrath argues in error that all that is necessary "for a successful equal protection case is: similarly situated applicants; similarly situated properties; and similar land development plans." Brief for McGrath J.W. McGrath Organization in support of appeal p. 10.

More, however, must be demonstrated by McGrath than just similarly situated applicants; similarly situated properties; and similar land development plans. To prevail in its equal protection claim, McGrath must demonstrate conscious discrimination by the township, unrelated to any legitimate objective. *Korsunsky* at 183. While an extensive pattern of disparate treatment of similarly situated applicants may in some situations demonstrate a valid equal protection claim, the denial of waivers to the Bristol Township SALDO by the township council compared to a decision four years earlier by the Bristol Township Zoning Hearing Board granting variances to the Bristol Township Zoning Ordinance, does not by itself demonstrate conscious discrimination. Aside from these variance grants by a different government entity, under a different standard of review, McGrath offers no further evidence that the council acted arbitrarily, irrationally, or in any way consciously discriminated against McGrath. Quite the opposite, the record demonstrates that the township and its engineer operated in good faith,

continually working with McGrath as McGrath revised and resubmitted its land use plans. McGrath was afforded an open and fair hearing in front of the township council. There is no suggestion that the hearing was a mere formality in a pre-determined denial, as was the case in *Knipple*. Furthermore, McGrath never attempted to correct its deficiencies or to resubmit its development plans, but instead filed the present appeal immediately after receiving its denial.

Upon request of McGrath, both parties were given leave to file supplemental briefs on the application of the Commonwealth Court's recent decision in *Highway Materials Inc. v. Board of Supervisors of Whitemarsh Township*, 974 A.2d 539 (Pa. Commw. 2009). In *Highway Materials*, the Commonwealth Court found that the board of supervisors engaged in bad faith throughout the landowner's land development application, including rezoning the landowner's property multiple times without notice, ignoring the landowner's requests for information, refusing to discuss the actual proposed land development plans during meetings with the landowner, and ultimately refusing to grant any extension of time to the landowner.

*Highway Materials* addresses a municipality's legal obligation to proceed in good faith while reviewing land development plans. It does not address equal protection in zoning matters, nor does it address the granting of prior variance relief as a basis for demonstrating a township's conscious discrimination against a landowner. Nonetheless, McGrath intertwines the bad faith claim from *Highway Materials* into its own claim of conscious

discrimination, arguing that the court's finding of bad faith in *Highway Materials* warrants this court's finding that a grant of variances by a separate municipal body several years earlier amounts to conscious discrimination. The factual and legal claims in *Highway Materials* do not support McGrath's action against council for conscious discrimination.

McGrath has not carried its burden of demonstrating that council consciously discriminated against it. There is no indication of bad faith by council, let alone conscious discrimination. McGrath's entire equal protection claim lies on the assertion that two competing pharmacies were given variance relief several years earlier, but as has long been recognized in the Commonwealth, "[j]ust as grants of variances to one's neighbors do not, as a matter of law, furnish a property owner with any legal justification for a variance, previous variances do not oblige the board to grant yet another." *Vito* at 272, 458 A.2d at 621. As there is no indication of conscious discrimination on the council's behalf, the grant of variance relief to Walgreen's has no legal bearing on McGrath's development plans and council did not violate McGrath's equal protection rights.

## IV. ABUSE OF DISCRETION

McGrath claims that the council abused its discretion and committed errors of law in denying three waiver requests and denying McGrath's plans because of concerns regarding the size and location of the pharmacy's loading zone, the proposed pervious pavement system and the council's rejection of McGrath's traffic study.

Again, council abuses its discretion when its findings are not supported by substantial competent evidence. *Money v. Zoning Hearing Board of Haverford Township,* 755 A.2d 732 (Pa. Commw. 2000). A single legitimate reason set forth by the council for its denial of a plan will support an entire denial. *Kassouf v. Township of Scott,* 584 Pa. 219, 234, 883 A.2d 463, 473 (2005). Each of council's decisions now challenged by McGrath must lack substantial credible evidence to be an abuse of discretion.

## A. *Denial Based on Proposed Loading Space*

McGrath first claims that the council abused its discretion by rejecting a waiver from the loading space requirements under SALDO section 523(I)(1)(b) and by denying the submitted plans based on the size and location of the proposed loading space. In arguing that the waiver was unlawfully denied by council, McGrath asserts that it need only demonstrate unreasonableness or unique and undue hardships under SALDO section 900(c). Section 900(c), however, is the requirement that all requests for waivers be fully written and contain the full factual grounds supporting the claim of unreasonableness or undue hardship. The SALDO provision actually governing the grant of waivers clearly states:

"If any mandatory provisions of this ordinance are shown by the applicant to be unreasonable *and* cause unique and undue hardships as they apply to the proposed subdivision and land development, council may grant a modification in writing to such applicant from such mandatory provisions so that substantial justice may be done and the public interest secured, provided such

modifications will not have the effect of nullifying the intent and purpose of this ordinance." SALDO section 900(b). (emphasis added)

Under section 900(b), it was McGrath's burden to demonstrate not only that the SALDO requirement was unreasonable, but that McGrath would also experience unique and undue hardships as a result of the requirement.

The first requested waiver was from SALDO section 523(I)(1)(b), which requires loading spaces to be at least 12 feet wide and 55 feet long. McGrath's plan proposed a loading space of 12.5 feet wide and 20 feet in length. The council rejected the waiver request finding that McGrath did not demonstrate that the SALDO requirement is unreasonable and that it presented a unique and undue hardship to McGrath. Reviewing the council's written decision rejecting the waiver and the hearing testimony, McGrath did not offer any evidence of a unique and undue hardship, but instead only complained that complying with the requirements would require a smaller store than McGrath desired and more loading space than McGrath felt it needed. N.T. 25-27. Neither of these assertions demonstrates that the loading space requirement was unreasonable and caused unique and undue hardships to the land development.

Moreover, there was ample competent evidence introduced at the hearing challenging McGrath's and CVS Pharmacies representations about the adequacy of the loading zone and the frequency of deliveries needed by the proposed pharmacy. McGrath testified that a 56-foot

long tractor-trailer would make deliveries twice a week to the proposed new pharmacy, in addition to another seven or eight deliveries a week by a 20- to 30-foot long panel truck. N.T. 23-24. When questioned how the proposed loading area would accommodate a delivery from both a tractor-trailer and a panel truck at the same time, McGrath responded that it was unlikely to ever occur, but that if it happened the proposed loading area could not accommodate both. N.T. 25. When the council asked if it was feasible to adjust that size of the store to allow for a large loading area, McGrath responded that it was obviously feasible, but that it would not fit any of CVS' prototype stores, that CVS would not want to move to a smaller location, and that it would not be beneficial to the community.[3] N.T. 26-27. The council also noted the Bucks County Planning Commission's concerns that the location of the loading zone is parallel to the pharmacy's drive-thru exit, potentially causing problems for vehicles exiting the pharmacy while deliveries are received. N.T. 32. McGrath stated that it did not agree with the Planning Commission's concerns and that the general location of the loading zone and the drive-thru exit remained the same as it was in the land development plan submitted to the Planning Commission. N.T. 33. Council's decision that McGrath did not demonstrate an undue burden or hardship was based on substantial competent evidence. Council neither abused its discretion, nor committed an error of law in denying the loading zone waiver.

---

3. From the testimony presented before council it was determined that CVS already operated a nearby pharmacy in Bristol Township and that CVS simply felt it needed a larger store in the same area. N.T. 5.

## B. *Denial of Waiver of Curbline Requirement*

The second waiver request denied by the council was from the requirement that no less than 15 feet of open space be provided between the curbline of any uncovered parking area and the outside wall of the nearest building. SALDO section 509(f). McGrath's development plan called for a separation of nine feet in one area and only four and a half feet in two other areas. McGrath argued at its hearing that the proposed six-inch curb and concrete wheel stops for the parking spaces were sufficient to alleviate concerns about the separation of parking spaces from walkways. Neither the proposed curb height nor wheel stops address how the curbline requirement was unreasonable and caused unique and undue hardships. No other evidence relating to the curbline requirement was presented to the council at the hearing. As the proposed curb and wheel stop installation do not evidence any hardship suffered by McGrath in complying with the SALDO requirement, council did not abuse its discretion in denying the requested waiver.

## C. *Denial of Named Features Waiver*

The third denied waiver request was from the requirement that the plan state location, names, and widths of streets, railroads, sanitary sewers, storm drains, water mains, culverts, petroleum product lines, gas lines, electric lines, telephone lines, fire hydrants, and all other utilities or significant manmade features on or within 200 feet of the tract, as required under SALDO section 803(c)(3). McGrath argues that council abused its discretion

because this waiver is routinely granted and because McGrath had "no notice and no opportunity to make minor corrections to the plan" before the waiver and development plan were denied. McGrath's brief p. 19. McGrath's position that it had no notice and no opportunity to make corrections to the plan is a peculiar one, when it knew of the requirement prior to the hearing, it knew of the deficiency from the township engineer's review letters, and when McGrath decided to file this appeal, rather than submit a corrected plan to council. McGrath's choice to pursue an appeal over revising its plans does not equate to McGrath having no notice or opportunity to make corrections to the plan. Likewise, McGrath's belief that the denial of a waiver that previously has been granted to other applicants does not on its own demonstrate abuse of discretion. As discussed above, a prior grant of a waiver does not automatically require future grants of similar waivers. *Swemley v. Zoning Hearing Board of Windsor Township*, 698 A.2d 160, 163 (Pa. Commw. 1997). Council did not abuse its discretion and did not commit an error of law in denying the waiver.

## D. *Denial of Proposed Pervious Pavement*

In addition to denying the requested waivers, the township also rejected McGrath's proposed pervious paving materials in the parking areas, stating that the proposed pervious paving material had not previously been used in land development projects in Bristol Township and because of council's concerns about the required maintenance of the surface. N.T. 34, 38. The township engi-

neer specifically testified that if the system was not properly maintained, the pervious pavement would become impervious and the land development would then exceed the maximum allowed impervious surface ratio. N.T. 35. Aesthetic concerns regarding the replacement of grass surfaces with pervious pavement, thereby giving the lot the appearance of being entirely paved, were also presented to council. N.T. 38. McGrath argued that it did not view this issue as an ordinance issue at all, but rather as a maintenance issue. N.T. 37. McGrath further acknowledged that if the system was not maintained, it would malfunction and that a maintenance agreement between McGrath and Bristol Township for the upkeep of the pervious pavement would be required. N.T. 37-38. Based on the evidence provided to council, council's decision to reject McGrath's proposed pervious pavement system was justified with substantial competent evidence and was not an abuse of council's discretion.

### E. *Rejection of McGrath's Traffic Impact Study*

Finally the council rejected the submitted traffic impact study because the development site is located near two large schools, yet the traffic study was conducted in July when the schools were not in session and therefore did not accurately reflect the impact the development would have on traffic patterns from September through June. McGrath complains that it was not required to submit a traffic impact study and therefore the council could not base its denial of McGrath's plans on the traffic study. McGrath further argues that there was no evidence of deficiency within the traffic study. Council, however,

legitimately questioned the accuracy of the traffic study because it was conducted in July, when two large nearby schools were not in session. It is true that a traffic impact study was not required under the SALDO or zoning ordinance; however, once it was submitted, council had every right to question its trustworthiness and reliability. Council did not abuse its discretion in rejecting the accuracy of McGrath's traffic impact study. N.T. 43-45.

## V. CONCLUSION

The foregoing represents this court's reasons for the denial of McGrath's land use appeal.