# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joseph Randazzo, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 490 C.D. 2016 |
| | : | Submitted: July 22, 2016 |
| The Philadelphia Zoning Board | : | |
| of Adjustment | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: October 12, 2016**

In this zoning appeal, Joseph Randazzo (Applicant) asks whether the Court of Common Pleas of Philadelphia County (trial court) erred in affirming a decision of the Philadelphia Zoning Board of Adjustment (ZBA) that denied his request for a variance from the maximum height requirement for his proposed multi-unit residential building. The ZBA determined, among other things, Applicant did not prove the requisite unnecessary hardship to justify the grant of a variance or that the variance sought was the minimum that would afford relief. Upon review, we affirm.

## I. Background

The ZBA made the following findings. In January 2015, Applicant applied to the Philadelphia Department of Licenses and Inspections (L&I) for a zoning/use registration permit for the consolidation of two lots, the demolition of an existing two-story structure and the construction of a six-story, ten unit

apartment building with eight on-site parking spaces at 746-48 South 16th Street in Philadelphia (property). L&I determined, among other things, that the proposed structure, at a height of 67 feet 8 inches, exceeded the 38-foot maximum height requirement for the Residential Multi-Family-1 (RM-1) zoning district in which the property lies. As a result, it issued a notice of refusal. Applicant appealed to the ZBA.

The ZBA held a hearing. At the hearing, Applicant's counsel noted that Applicant operated a contracting business on the property for many years, and he now sought to develop the property into a multi-family residential building as the area changed and was no longer conducive to his business use. After Applicant's counsel pointed out that the area contained existing tall structures on large lots, the ZBA indicated Applicant also had to show unnecessary hardship. Applicant's counsel responded that his proposed combined lot was unique in how it was structured and where it was situated, and, as a result, it deserved to have a larger building on it.

When questioned as to why the proposed structure could not be built in compliance with Philadelphia Zoning Code (Code) requirements, Applicant's counsel responded, "when you look at the size of the [combined] lot, how large it is, when you compare it with the remaining structures" erecting "a squat building next to a taller building, across from a taller building, in the context, it's out of context." ZBA Hr'g, Notes of Testimony (N.T.), 5/13/15, at 23-24; Reproduced Record (R.R.) at 27a-28a.

Several individuals testified in opposition to Applicant's variance request. Madeline Shikomba, representing the North of Washington Avenue Coalition, a registered community organization in the area, explained that her organization opposed Applicant's project because it did not "want to begin having tall buildings in our neighborhood" and would "rather have [Applicant] build by right, what he wants to build there, and we [would] have no objection to it." N.T. at 32; R.R. at 36a. Elena Biondi, a neighborhood resident, testified Applicant's proposed building "would be directly behind [her]," would "totally disrupt [her] view," and "[would change] the nature of the neighborhood [she] purchased into." N.T. at 32-33; R.R. at 36a-37a.

In addition, Ashley Scott, another neighborhood resident, testified she did not "agree that there's a hardship here," and she believed Applicant "could build within the [C]ode and he's choosing not to ...." N.T. at 34; R.R. at 38a. Adrian Popscu, a neighbor who resides at 757 Chadwick Street, the street located behind the property, stated he opposed "the height of the building" which had "absolutely no consideration for people who have their kitchens and bedrooms and living rooms on Chadwick Street." N.T. at 35; R.R. at 39a. Additionally, Matthew Ostrow, another neighborhood resident, testified he and his wife opposed Applicant's building based on the proposed height.

On the other hand, Linda Whitfield, a neighborhood resident and block captain, expressed her support for Applicant's request. Antionette Davis Fisher, a neighborhood resident, testified she did not oppose Applicant's request.

3

Peter Elliott, representing Councilman Kenyatta Johnson's office, indicated "the Councilman's position is one of [non-opposition]." N.T. at 40; R.R. at 44a. Additionally, Paula Burns, representing the City Planning Commission, stated her agency had "no objection to the granting of the variance." N.T. at 45; R.R. at 49a. The ZBA also received a letter from the South of South Neighborhood Association (SOSNA), which described Applicant's "meetings with the community," and stated SOSNA "respectfully defer[red] to the ZBA on this application since the [zoning] committee was mostly in favor of the project while the community votes were nearly evenly split." See SOSNA Letter to ZBA, 5/8/15, at 1, 3; R.R. at 113a, 115a (emphasis deleted) (footnote omitted).

Based on these findings, the ZBA made the following conclusions of law. The maximum building height permitted in the RM-1 district is 38 feet, while Applicant proposed to construct a building that would be 67 feet, 8 inches tall.[1] Thus, Applicant's proposal required a dimensional variance. To establish entitlement to a variance, an applicant must show: unnecessary hardship resulting from the property's unique physical conditions; such hardship is not self-imposed; granting the variance would not adversely affect the public health, safety or welfare; and, the variance sought is the minimum necessary to afford relief. Alpine, Inc. v. Abington Twp. Zoning Hearing Bd., 654 A.2d 186 (Pa. Cmwlth. 1995). Mere economic hardship will not satisfy the "unnecessary hardship"

_____

[1] At the hearing, Applicant indicated that, after his meeting with SOSNA, he agreed to modify his original proposal to decrease the height of the proposed building from 67 feet, 8 inches to 56 feet, reduce the building size to five stories and construct 7 units, instead of 10, as originally proposed. Applicant also agreed to reduce the front façade of the building to 35 feet at 16th Street.

4

requirement; a variance should not be granted merely because it would enable a more profitable use of the property. See, e.g., Teazers, Inc. v. Zoning Bd. of Adjustment of City of Phila., 682 A.2d 856 (Pa. Cmwlth. 1996).

The ZBA determined Applicant did not satisfy the criteria for the grant of a variance. More particularly, the ZBA determined Applicant did not show that denial of the requested variance would result in unnecessary hardship, as defined by relevant Code provision and applicable case law. The ZBA further determined Applicant did not identify any unique physical characteristic of the property that would prevent its development in compliance with the RM-1 district's dimensional requirements.

In addition, the ZBA stated, Applicant's argument that a taller building would be contextual and should be permitted based on the size of the lot did not amount to a showing of hardship. The ZBA stated this is particularly true given that the lot's large size was caused, at least in part, by Applicant's proposed consolidation of two smaller lots. While the absence of evidence establishing hardship was, by itself, sufficient to warrant denial of the variance, the record lacked evidence that the proposed use met all remaining variance criteria. To that end, Applicant did not present evidence establishing the variance requested was the minimum necessary to afford relief or the proposed use would not have a detrimental impact on public health, safety or welfare. For these reasons, the ZBA denied Applicant's variance request. Applicant appealed to the trial court.

Without taking additional evidence, the trial court affirmed. It determined the ZBA properly denied Applicant's variance request where Applicant did not satisfy the necessary criteria to obtain a variance. The trial court stated, among other things, the ZBA properly determined Applicant did not prove the requisite hardship or that the variance sought was the minimum that would afford relief. Applicant sought reconsideration of the trial court's order, which was denied. This appeal by Applicant followed.

## II. Issues

On appeal,[2] Applicant states two issues. First, Applicant argues the ZBA committed legal and factual errors where it applied use variance standards despite acknowledging Applicant sought a dimensional variance, and it refused to apply the multi-factor dimensional variance standard established by the Pennsylvania Supreme Court and the Code. Additionally, Applicant asserts, the ZBA erred in failing to apply the dimensional variance standard to Applicant's modified proposal, which, among other things, eliminated a sixth floor, reduced the maximum building height to 56 feet, and reduced the height of the 16th Street front façade to 35 feet. Applicant further contends the ZBA ignored undisputed evidence concerning the context of the surrounding area, which includes two 130-

---

[2] Because the parties presented no additional evidence after the ZBA's decision, our review is limited to determining whether the ZBA committed an abuse of discretion or an error of law. Society Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment, 42 A.3d 1178 (Pa. Cmwlth. 2012).

6

foot residential towers, an adjacent 50-foot church and other tall and large buildings.[3]

### III. Discussion

As fact-finder, the ZBA is the sole judge of the credibility and weight of the evidence presented. Tri-County Landfill, Inc. v. Pine Twp. Zoning Hearing Bd., 83 A.3d 488 (Pa. Cmwlth.), appeal denied, 101 A.3d 788 (Pa. 2014). As a result, the ZBA is free to reject even uncontradicted evidence that it finds lacking in credibility. Id. Our review of the ZBA's factual findings is limited to determining whether the ZBA's findings are supported by substantial evidence. Id.

Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Oasis v. Zoning Hearing Bd. of S. Annville Twp., 94 A.3d 457 (Pa. Cmwlth. 2014). When performing a substantial evidence analysis, courts must view the evidence in the light most favorable to the party who prevailed before the fact-finder. In re McGlynn, 974 A.2d 525 (Pa. Cmwlth. 2009). It is irrelevant whether the record contains evidence to support findings other than those made by the fact finder; the critical inquiry is whether there is evidence to support the findings actually made. Keslosky v. Old Forge Civil Serv. Comm'n, 73 A.3d 665 (Pa. Cmwlth. 2013). If there is, an appellate court may not disturb the findings. Id.

---

[3] No party filed a brief in opposition to Applicant's appeal. Further, the City of Philadelphia indicated it took no position on Applicant's appeal, and, therefore, it would not participate in this appeal.

## A. Contentions

Applicant first asserts the ZBA erred in acknowledging that the appeal involved only a limited height dimensional variance, but thereafter purported to apply use variance standards, and also applied standards that were not applicable to any variance requests. In so doing, Applicant contends, the ZBA violated its obligations under Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh, 721 A.2d 43 (Pa. 1998), and the Code provision that applies to dimensional variances.

Applicant further argues the ZBA based its decision on serious factual errors, including failing to apply the dimensional standard to the modified building height of 56 feet, assuming the original 67-foot, 8 inch, six-floor abandoned plan was at issue. Applicant maintains the ZBA also refused to consider the context of the neighborhood with its many tall and large buildings, including the 50-foot adjacent church, the tall three-story adjacent buildings, the two 130-foot tall multi-unit residential buildings and other large buildings, as well as the benefit of bringing the property into compliance with RM-1 district use regulations, and avoidance of burdening the community by reducing parking issues and not pushing development to the allowable limit.

## B. Analysis

A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations, whereas a use variance involves a request to use property in a manner that is wholly outside zoning regulations. Hertzberg. The same criteria apply to use and dimensional variances. Id. However, in Hertzberg, our Supreme Court set forth a more relaxed

8

standard for establishing unnecessary hardship for a dimensional variance, as opposed to a use variance.

Under Hertzberg, courts may consider multiple factors in determining whether an applicant established unnecessary hardship for a dimensional variance. These factors include: "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." Id. at 50.

Although Hertzberg eased the requirements, it did not remove them. Tri-County. An applicant must still present evidence as to each of the conditions set forth in the zoning ordinance, including unnecessary hardship. Id.

Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in Hertzberg. Id. To that end, as we explained in Society Created to Reduce Urban Blight v. Zoning Board of Adjustment, 771 A.2d 874, 878 (Pa. Cmwlth. 2001):

> [W]hile Hertzberg eased the requirements for granting a variance for dimensional requirements, it did not make dimensional requirements … 'free-fire zones' for which variances could be granted when the party seeking the variance merely articulated a reason that it would be financially 'hurt' if it could not do what it wanted to do with the property, even if the property was already being occupied by another use. If that were the case, dimensional requirements would be meaningless-

9

at best, rules of thumb-and the planning efforts that local governments go through in setting them to have light, area (side yards) and density (area) buffers would be a waste of time. …

See also Singer v. Phila. Zoning Bd. of Adjustment, 29 A.3d 144, 150 (Pa. Cmwlth. 2011) ("[I]n order to establish unnecessary hardship for a dimensional variance an applicant must demonstrate something more than a mere desire to develop a property as it wishes or that it will be financially burdened if the variance is not granted.") (emphasis added).

Here, the Code establishes the following standards to obtain a variance (with emphasis added):

(e) **Criteria for Approval.**

The [ZBA] shall grant a variance only if it determines that the applicant has demonstrated that the criteria of this § 14-303(8)(e) (Criteria for Approval) have been met …. Otherwise, the [ZBA] shall deny the variance.

(.1) **General Criteria.**

… The [ZBA] shall grant a variance only if it finds each of the following criteria are satisfied:

(.a) The denial of the variance would result in an unnecessary hardship. The applicant shall demonstrate that the unnecessary hardship was not created by the applicant and that the criteria set forth in § 14-303(8)(e)(.2) (Use Variances) below, in the case of use variances, or the criteria set forth in § 14-303(8)(e)(.3) (Dimensional Variances) below, in the case of dimensional variances, have been satisfied;

(.b) The variance, whether use or dimensional, if authorized will represent the minimum variance that will

10

afford relief and will represent the least modification possible of the use or dimensional regulation in issue;

(.c)   The grant of the variance will be in harmony with the purpose and spirit of this [Code];

(.d)   The grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire, or otherwise endanger the public health, safety, or general welfare;

(.e)   The variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;

(.f)   The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

(.g)   The grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located; and

(.h)   The grant of the variance will not create any significant environmental damage, pollution, erosion, or siltation, and will not significantly increase the danger of flooding either during or after construction, and the applicant will take measures to minimize environmental damage during any construction.

* * * *

(.3)  **Dimensional Variances.**

To find an unnecessary hardship in the case of a dimensional variance, the [ZBA] may consider the economic detriment to the applicant if the variance is denied, the financial burden created by any work necessary to bring the building into strict

compliance with the zoning requirements and the characteristics of the surrounding neighborhood.

Section 14-303(8)(e)(.1), (.3).

With regard to the criteria necessary to obtain the requested variance, the ZBA here made the following relevant determinations (with emphasis added):

6.      To establish entitlement to a variance, an applicant must show an unnecessary hardship resulting from the property's unique physical conditions or circumstances ….

7.      Mere economic hardship will not satisfy the 'unnecessary hardship' requirement and a variance should not be granted merely because it would permit a more profitable use of the property.  See, e.g., [Teazers].

8.      On this record, Applicant has not demonstrated that the criteria for grant of a variance are met.

9.      Applicant has not shown that denial of the requested [variance] will result in unnecessary hardship, as defined by the relevant Code provisions and applicable case law. Code Sections 14-303(8)(e)(.1).

10.     Applicant has not identified any unique physical characteristic or circumstance of the [p]roperty that would prevent its development in compliance with RM-1 dimensional requirements.

11.     Applicant's argument that a taller building would be contextual and should be permitted due to the size of the lot does not amount to a showing of hardship.  This is particularly so given that the [property's] large size is due, at least in part, from the proposed consolidation of two smaller lots.

12.     While the absence of evidence establishing hardship is, in itself, sufficient to require denial of a variance, the record

is also devoid of evidence establishing that the proposed use meets all remaining criteria for grant of a variance.

13. Applicant has not presented evidence establishing that the variance requested is the least necessary to afford relief or that the proposed use will not have a detrimental impact upon the public health, safety or welfare.

ZBA Op., 5/15/15, Concls. of Law Nos. 6-13.

As Applicant correctly notes, the ZBA did not expressly reference the hardship standard that applies to dimensional variances and did not mention Applicant's modifications to its proposal which would, among other things, decrease the height of the proposed building to 56 feet, decrease the number of residential units in the building and lower the building by one story. However, in its decision, the ZBA expressly acknowledged that Applicant sought a dimensional variance. Concl. of Law No. 1. Moreover, we discern no error in the ZBA's ultimate determination that Applicant did not satisfy the criteria necessary to obtain the requested variance here, which would permit a deviation from the Code's 38-foot maximum height requirement for the RM-1 district (a deviation of 18 feet based on Applicant's modified proposal of 56 feet).[4]

In particular, as to the unnecessary hardship criterion, before the ZBA, Applicant's counsel focused on the fact that several large lots near the property are

_____

[4] Because no party filed a brief in opposition to Applicant's appeal here, there is no argument regarding Applicant's ability to modify its proposal before the ZBA after filing an appeal from a refusal by L&I. However, in light of the fact that Applicant's modified proposal seeks to deviate from the RM-1 district's maximum height requirement by 18 feet (as opposed to the originally proposed 29-foot deviation), we need not address the issue of whether Applicant may modify its proposal under these circumstances because, as discussed below, the ZBA properly determined Applicant did not satisfy the requisite criteria to obtain a variance here.

13

improved with tall structures, including an adjacent, 50-foot tall church. Applicant's counsel also asserted the property was irregularly-shaped. Additionally, Applicant's counsel noted, although the Code allowed a maximum of 12 units, Applicant only proposed 7 units.

Further, the following exchange occurred between Applicant and a ZBA Board Member (with emphasis added):

> [ZBA Board Member]: Can you lower [the height of the proposed building]?
>
> [Applicant]: It's really feasibility. If we lower another floor, then you're going to have three apartment units and a single family, which to spend the amount of money there --
>
> [ZBA Board Member]: I'm not asking about money.
>
> [Applicant]: Well, I mean, it's the feasibility. That's the only hardship. I don't want to do 12 units there. I'm trying to do a limited amount of units but also to make the project work. And we reduced the amount of units from ten originally down to seven, and I don't see it working any other way.

N.T. at 29-30; R.R. at 33a-34a.

Contrary to Applicant's assertions, we do not believe the scant evidence he presented before the ZBA[5] is sufficient to satisfy the unnecessary hardship criterion, even under the relaxed Hertzberg standard. To that end,

---

[5] "Statements by a person's attorney on his or her behalf shall not be considered as testimony, except where agreed upon by the parties." Section 14-303(14)(f) of the Code. Our review of the transcript of the hearing before the ZBA here reveals no agreement that Applicant's counsel's statements could be considered testimony. Therefore, we do not consider those statements testimony.

Applicant's testimony amounts to little more than his desire to construct a multi-unit residential building at a height he believes is necessary to make the project feasible. However, the ZBA did not credit Applicant's testimony regarding what he deemed necessary for the project to be feasible. As a result, Applicant did not persuade the ZBA that he could not construct a multi-family residential building in compliance with the Code's maximum height requirement of 38 feet in the RM-1 district. This is not surprising given Applicant's meager proof on this issue. In essence, Applicant proved little more than that adherence to the maximum height requirement imposes a burden on his personal desire to construct a multi-family residential building at his chosen height. This is not sufficient to establish hardship even under the relaxed Hertzberg standard.

Indeed, as this Court previously stated:

Ever since our Supreme Court decided Hertzberg, we have seen a pattern of cases arguing that a variance must be granted from a dimensional requirement that prevents or financially burdens a property owner's ability to employ his property exactly as he wishes, so long as the use itself is permitted. Hertzberg stands for nothing of the kind. Hertzberg articulated the principle that unreasonable economic burden may be considered in determining the presence of unnecessary hardship. … A variance, whether labeled dimensional or use, is appropriate "only where the *property*, not the person, is subject to hardship." Szmigiel v. Kranker, 298 A.2d 629, 631 (Pa. Cmwlth. 1972) (emphasis in original).

Yeager v. Zoning Hearing Bd. of City of Allentown, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (rejecting applicant's request for dimensional variances from ordinance's setback and clear sight triangle requirements where only hardship

15

amounted to applicant's desire to construct a building for its new car dealership that complied with specifications required by vehicle manufacturer).

Further, contrary to Applicant's assertions, our analysis of the Hertzberg factors does not yield a different result. Specifically, while Applicant focuses on the characteristics of the surrounding neighborhood, which is one factor that may be considered in evaluating a dimensional variance request, he does not persuasively address the remaining Hertzberg factors. To that end, we must also consider the economic detriment to the applicant if the variance is denied and the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements. Section 14-303(8)(e)(3) of the Code; Hertzberg.

Here, Applicant asserted the context of the surrounding community, *i.e.*, the height of some nearby buildings, made the grant of a dimensional variance to exceed the height requirement appropriate. However, he presented no credible evidence as to the economic detriment that would result from denial of the requested variance, nor did he present any evidence of the financial hardship created by the work necessary to bring the building into compliance with the Code's 38-foot maximum height requirement. Indeed, Applicant's existing building is 28 feet in height. R.R. at 1a. Thus, Applicant did not satisfy the unnecessary hardship criterion even under the relaxed Hertzberg standard.

In addition, based on our review of the record, we agree with the ZBA that Applicant did not prove the variance, if authorized, would represent the

minimum variance that would afford relief and the least modification possible of the dimensional regulation at issue. See Concl. of Law No. 13. Indeed, in his brief to this Court, Applicant does not assert otherwise.[6] Further, Applicant offers no response to the ZBA's determination that he did not prove that his proposed use would not have a detrimental impact on public health, safety or welfare. Id.

## IV. Conclusion

For these reasons, we affirm the order of the trial court, which affirmed the ZBA's decision denying Applicant's request for a variance from the 38-foot maximum height requirement in the RM-1 zoning district.

_____
ROBERT SIMPSON, Judge

---

[6] As Applicant correctly points out, at the ZBA hearing, one ZBA Board Member stated: "You have to also show a hardship. You have to show why you're surrounded by such giant buildings that your land is useless if [the building is not] extra tall. …" N.T. at 15; R.R. at 19a (emphasis added). This was an inaccurate statement of the law. See Marshall v. City of Phila., 97 A.3d 323, 330 (Pa. 2014) ("This Court has repeatedly made clear that in establishing hardship, an applicant for a variance is not required to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose."). Nevertheless, the ZBA did not reference or apply this erroneous standard in its written decision. As such, this inaccurate statement, made only at the hearing, does not constitute a basis for reversal of the ZBA's decision.

In addition, citing Marshall and O'Neill v. Philadelphia Zoning Board of Adjustment, 120 A.2d 901 (Pa. 1956), Applicant asserts the ZBA overlooked the fact that his proposed change in use would result in a change from a non-conforming business use to a conforming residential use, a factor that weighs in favor of granting a variance. While Applicant is correct that the ZBA did not mention this point in its decision, he offers no assertion that this would somehow alleviate his burden of proving the requisite criteria to obtain the variance, including unnecessary hardship and that the variance sought is the minimum that would afford relief.

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Randazzo,                                    :
                        Appellant                   :
                                                    :
            v.                                      :        No. 490 C.D. 2016
                                                    :
The Philadelphia Zoning Board                       :
of Adjustment                                       :

# O R D E R

**AND NOW**, this 12th day of October, 2016, the order of the Court of Common Pleas of Philadelphia County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge